Dale M. Cendali (DC 2676)
Claudia Ray (CR 4132)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
dale.cendali@kirkland.com
claudia.ray@kirkland.com

*Attorneys for Defendant/Crossclaim Plaintiff*
THE ASSOCIATED PRESS

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SHEPARD FAIREY AND OBEY GIANT ART, INC.,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No.: 09-01123 (AKH)** |
| **THE ASSOCIATED PRESS,** | |
| **Defendant and Counterclaim Plaintiff,** | **ANSWER AND CROSS CLAIM** |
| **v.** | |
| **SHEPARD FAIREY, OBEY GIANT ART, INC., OBEY GIANT LLC AND STUDIO NUMBER ONE, INC.,** | |
| **Counterclaim Defendants,** | |
| **And** | |
| **MANNIE GARCIA** | |
| **Defendant, Counterclaim Plaintiff and Cross Claim Plaintiff/Defendant,** | |
| **v.** | |

**SHEPARD FAIREY AND OBEY GIANT ART, INC.,**

**Counterclaim Defendants,**

**And**

**THE ASSOCIATED PRESS,**

**Cross Claim Plaintiff/Defendant.**

Defendant and Counterclaim and Cross Claim Plaintiff The Associated Press (hereinafter "The AP"), by and through its attorneys, Kirkland & Ellis LLP, hereby answers the Answer, Affirmative Defenses, Counterclaims, and Cross Claims of Defendant-Intervenor Mannie Garcia, dated July 23, 2009 (the "Cross Claims"), as follows:

## NATURE OF THE ACTION AND RELIEF SOUGHT

1.-52. States that the allegations contained in ¶¶ 1-52 of the Cross Claims are statements as to which no responsive pleading by The AP is required because they constitute Mr. Garcia's response to the allegations contained in the Complaint filed in this case by Plaintiffs and Counterclaim and Cross Claim Defendants Shepard Fairey, Obey Giant Art, Inc., Obey Giant LLC, Studio Number One, Inc. (collectively, "Fairey" or "Plaintiffs"), to which The AP has previously responded, but to the extent any response is required, hereby incorporates by reference The AP's Answer, Affirmative Defenses and Counterclaims, filed on March 11, 2009 ("The AP's Answer").

53. Denies the allegations contained in ¶ 53 of the Cross Claims, except admits that Mr. Garcia created the photograph referenced in ¶ 96 of The AP's Answer (the "Obama Photo"), which Fairey used to make the poster of then-Senator Barack Obama referenced in ¶ 142 of The AP's Answer (the "Obama Poster"), while Mr. Garcia was a full-time, salaried staff

2

photographer for The AP, further admits that Fairey's use of the Obama Photo does not fall within the scope of the fair use exception set forth in 17 U.S.C. § 107, and further admits that the Obama Photo is set forth as Exhibit B to The AP's Answer.

54.     Denies the allegations contained in ¶ 54 of the Cross Claims, except admits that Mr. Garcia worked for The AP as a full-time, salaried staff photographer for approximately five weeks in April-May 2006 until he voluntarily resigned.

55.     Denies the allegations contained in ¶ 55 of the Cross Claims, except admits that Mr. Garcia was a full-time, salaried staff photographer for The AP with full access to The AP's offices and facilities and was offered the use of The AP's photographic equipment; further admits that Mr. Garcia chose to use his own computer and camera equipment while employed by The AP; further admits that Mr. Garcia is a skilled photographer; further admits that while he was employed by The AP as a full-time, salaried staff photographer Mr. Garcia undertook various photographic assignments selected by his supervisor(s); further admits that one of the assignments Mr. Garcia was given by The AP's assignment editor was covering a press conference that was held at the National Press Club on April 27, 2006, at which Mr. Garcia took a number of photographs, of which several, including the Obama Photo, were transmitted by Mr. Garcia to The AP's photo editor; and further admits that the photo editor then selected which of those photos to put on Photostream for use by The AP's subscribers and which to make available in The AP's Archive.

56.     Denies the allegations contained in ¶ 56 of the Cross Claims, except admits that Mr. Garcia was eligible to join the News Media Guild (the "Guild") upon being hired; further admits that Mr. Garcia acknowledged in writing that to the extent the staff photographer position for which he applied and was ultimately hired was covered by the Guild's collective bargaining

agreement, he would be subject to the terms and conditions of that agreement; further admits that Mr. Garcia did not receive health benefits because he was not employed for more than three months, as required under the Guild's collective bargaining agreement, and therefore was not eligible for such benefits; further admits that Mr. Garcia accrued and was paid for vacation time; further admits that Mr. Garcia was not paid any unemployment benefits because he voluntarily resigned his employment with The AP and therefore was not eligible for such benefits; and further admits that prior to being hired by The AP as a staff photographer, Mr. Garcia worked for The AP as a freelance photographer, at which time he signed a written agreement transferring any and all rights in and to any works he created for The AP, including any copyrights, to The AP.

57.     Denies the allegations contained in ¶ 57 of the Cross Claims, except admits that the Guild's collective bargaining agreement provides that The AP's staff photographers, which included Mr. Garcia, are free to work for other parties as long as such other work does not conflict with the interests of The AP or interfere with their full-time position as salaried, staff employees of The AP, and further admits that Mr. Garcia created the Obama Photo.

58.     Admits the allegations contained in ¶ 58 of the Cross Claims.

59.     Admits the allegations contained in ¶ 59 of the Cross Claims.

60.     Admits the allegations contained in ¶ 60 of the Cross Claims.

61.     Denies the allegations contained in ¶ 61 of the Cross Claims, except admits that The AP owns the copyright in and to the Obama Photo because Mr. Garcia created the Obama Photo within the scope of his employment as a full-time, salaried staff photographer for The AP, and further admits that The AP is generally in the business of licensing the use of its photographs through AP Images, the income from which is used to support both The AP's newsgathering

activities as well as The AP Emergency Relief Fund, which distributes grants to staffers and their families who are victims of tragedies such as Hurricane Katrina and provides benefits to the families of AP reporters and photographers (more than 30 to date) who have been killed while working to gather the news in some of the most dangerous regions in the world.

62.     Denies the allegations contained in ¶ 62 of the Cross Claims, except admits that Fairey should not have used the Obama Photo without authorization.

63.     Admits the allegations contained in ¶ 63 of the Cross Claims.

64.     Admits the allegations contained in ¶ 64 of the Cross Claims.

65.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 65 of the Cross Claims and therefore denies the same, except admits that Fairey has stated publicly that Fairey has manufactured and sold the Obama Merchandise, including manufacturing and selling sweatshirts at Plaintiffs' Web site <http://obeygiant.com/store> for $60 each.

66.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 66 of the Cross Claims and therefore denies the same, except admits that according to published reports, as of September 2008 alone Fairey's profits from the reproduction and distribution of the Obama Merchandise had already exceeded $400,000.

67.     Denies the allegations contained in ¶ 67 of the Cross Claims, except admits that the Obama Photo reflects, *inter alia*, Mr. Garcia's experience and his creative and artistic input.

68.     Denies the allegations contained in ¶ 68 of the Cross Claims, except admits that the Obama Merchandise contains all of the distinctive and creative elements of the Obama Photo, including the lighting, the angle of President Obama's head, his expression, and the direction and intensity of his gaze.

69.     Denies the allegations contained in ¶ 69 of the Cross Claims, except admits that Fairey used the Obama Photo without notice, credit or compensation to The AP.

## PARTIES

70.     Denies the allegations contained in ¶ 70 of the Cross Claims, except admits that The AP is a not-for-profit corporation with its principal place of business in New York, New York and further admits that it is one of the largest, oldest and most prominent news-gathering organizations in the world.

71.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 71 of the Cross Claims and therefore denies the same.

72.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 72 of the Cross Claims and therefore denies the same.

73.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 73 of the Cross Claims and therefore denies the same.

74.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 74 of the Cross Claims and therefore denies the same.

75.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 75 of the Cross Claims and therefore denies the same.

## JURISDICTION AND VENUE

76.     States that the allegations contained in ¶ 76 of the Cross Claims are a conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, admits that this Court has subject matter jurisdiction over Mannie Garcia's Counterclaims and Cross Claims.

77.     States that the allegations contained in ¶ 77 of the Cross Claims are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, admits that this Court has personal jurisdiction over Fairey.

78.     States that the allegations contained in ¶ 78 of the Cross Claims are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, admits that this Court has personal jurisdiction over The AP.

79.     States that the allegations contained in ¶ 79 of the Cross Claims are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, admits that venue is proper in this District.

## FACTUAL BACKGROUND

80.     Denies the allegations contained in ¶ 80 of the Cross Claims, except admits that The AP owns all right, title and interest in and to the Obama Photo, which was created as a work for hire by Mr. Garcia on April 27, 2006 within the scope of his employment as a full-time, salaried staff employee of The AP.

81.     Denies the allegations contained in ¶ 81 of the Cross Claims, except admits that Mr. Garcia was working as a full-time, salaried staff photographer for The AP when he was assigned to cover an event at the National Press Club on April 27, 2006 and created the Obama Photo within the scope of his employment, and further admits that The AP is the author and owner of the Obama Photo.

82.     Denies the allegations contained in ¶ 82 of the Cross Claims, except admits that the Obama Photo reflects Mr. Garcia's skill and artistic talents as a photographer and further admits that Mr. Garcia transmitted several of the photographs that he took at the National Press Club on April 27, 2006, including the Obama Photo, to The AP's photo editor; and further

admits that the photo editor then selected which of those photos to put on Photostream for use by The AP's subscribers and which to make available in The AP's Archive.

83. Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 83 of the Cross Claims and therefore denies the same, except admits that it has been publicly reported that in or about January 2008, Fairey created the Obama Poster using the Obama Photo and thereafter created the Obama Merchandise, also using the Obama Photo.

84. Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 84 of the Cross Claims and therefore denies the same, except admits that Fairey did not alter any of the distinctive characteristics of the Obama Photo as incorporated in the Obama Poster and the Obama Merchandise.

85. Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 85 of the Cross Claims and therefore denies the same.

86. Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 86 of the Cross Claims and therefore denies the same.

87. Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 87 of the Cross Claims and therefore denies the same, except admits that Fairey's copyright registration for the Obama Poster does not identify any pre-existing source material for that work.

88. Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 88 of the Cross Claims and therefore denies the same, except admits that Fairey's Complaint claims that the source photo used in creating the Obama Poster was a different photo depicting both then-Senator Barack Obama and George Clooney, which also was taken by Mr. Garcia at the April 27, 2006 National Press Club event.

89.     Denies the allegations contained in ¶ 89 of the Cross Claims.

90.     Denies the allegations contained in ¶ 90 of the Cross Claims, except admits that The AP is the owner of all right, title and interest in and to the Obama Photo, including without limitation all copyrights, and that The AP has obtained a copyright registration for the Obama Photo.

## FIRST COUNTERCLAIM – COPYRIGHT INFRINGEMENT

91.     Repeats and realleges each and every response to ¶¶ 1-90 above as if fully set forth herein.

92.     States that ¶ 91 of the Cross Claims is a statement of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the same.

93.     States that the allegations contained in ¶ 92 of the Cross Claims are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the same except admits that Fairey has infringed The AP's rights in and to the Obama Photo.

94.     States that the allegations contained in ¶ 93 of the Cross Claims are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the same.

## SECOND COUNTERCLAIM – CONTRIBUTORY COPYRIGHT INFRINGEMENT

95.     Repeats and realleges each and every response to ¶¶ 1-93 above as if fully set forth herein.

96.     States that ¶ 94 of the Cross Claims is a statement as to which no responsive pleading is necessary, but that to the extent any response is required, deny the same.

97.     States that the allegations contained in ¶ 95 of the Cross Claims are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the same except admits that Fairey has directly and indirectly infringed The AP's rights in and to the Obama Photo, including without limitation its copyright in that work.

98.     States that the allegations contained in ¶ 96 of the Cross Claims are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the same except admits that Fairey has knowingly and willfully infringed The AP's rights in and to the Obama Photo, including without limitation its copyright in that work.

99.     States that the allegations contained in ¶ 97 of the Cross Claims are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the same except admits that Fairey's infringement of The AP's rights in and to the Obama Photo, including without limitation its copyright in that work, is not authorized or otherwise permissible under the Copyright Act.

100.    States that the allegations contained in ¶ 98 of the Cross Claims are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the same except admits that Fairey's infringement of The AP's rights in and to the Obama Photo, including without limitation its copyright in that work, has been knowing and willful.

101.    States that the allegations contained in ¶ 99 of the Cross Claims are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the same except admits that Fairey's infringement of The AP's rights in and to the Obama Photo, including without limitation its copyright in that work, has been knowing and willful.

# DECLARATORY JUDGMENT

102.    Repeats and realleges each and every response to ¶¶ 1-100 above as if fully set forth herein.

103.    States that ¶ 100 of the Cross Claims is a statement as to which no responsive pleading is necessary, but that to the extent any response is required, deny the same.

104.    Denies the allegations in ¶ 101 of the Cross Claims, except admit that Fairey improperly obtained a copyright registration in the Obama Poster without disclosing the Obama Photo as the pre-existing work upon which the Obama Poster was based.

105.    Denies the allegations in ¶ 102 of the Cross Claims, except admits that Fairey's copyright registration for the Obama Merchandise does not identify any pre-existing source material for those works.

106.    Denies the allegations in ¶ 103 of the Cross Claims.

107.    States that the allegations contained in ¶ 104 of the Cross Claims are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the same.

108.    States that the allegations contained in ¶ 105 of the Cross Claims are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, admits that there is a dispute between The AP and Mannie Garcia as to the ownership of the copyright in and to the Obama Photo.

109.    Denies the allegations in ¶ 106 of the Cross Claims.

110.    Denies the allegations in ¶ 107 of the Cross Claims.

111.    States that the allegations contained in ¶ 108 of the Cross Claims are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the same.

## DEFENDANT'S AFFIRMATIVE DEFENSES

### FIRST DEFENSE

112.    The Cross Claims fail to state a claim upon which relief may be granted.

### SECOND DEFENSE

113.    The Cross Claims are barred in whole or in part by the doctrine of estoppel.

### THIRD DEFENSE

114.    The Cross Claims are barred in whole or in part by the doctrine of laches.

### FOURTH DEFENSE

115.    The Cross Claims are barred in whole or in part by the doctrine of waiver.

### FIFTH DEFENSE

116.    The Cross Claims are barred in whole or in part by the doctrine of acquiesence.

### SIXTH DEFENSE

117.    The Cross Claims are barred in whole or in part by the doctrine of unclean hands.

## THE AP'S CROSS CLAIM AGAINST INTERVENOR MANNIE GARCIA

### NATURE OF THE ACTION AND RELIEF SOUGHT

118.    The AP seeks a declaratory judgment that it, and not Defendant-Intervenor Mannie Garcia, is the owner of all right, title and interest in and to the photograph of then-Senator, now President, Obama that Mr. Garcia created on April 27, 2006 at the National Press Club (the "Obama Photo") while he was a staff photographer for The AP, and which Shepard Fairey later used to create the poster of then-Senator Barack Obama (the "Obama Poster") referenced in ¶ 142 of The AP's Answer, Affirmative Defenses and Counterclaims, filed on March 11, 2009 ("The AP's Answer").  A true and correct copy of the Obama Photo is attached hereto as **Exhibit A**.

119.    The AP has had no choice but to seek a declaratory judgment making clear, once and for all, that the photographs that Mr. Garcia created at the National Press Club on April 27, 2006 were taken while he was a full-time, salaried staff photographer of The AP and as such were works for hire and the sole property of The AP.  While Mr. Garcia is certainly a talented photographer, his understanding of copyright law is misguided.  It is hard to imagine a more clear-cut case of work-for-hire status than this one.  Among other things, Mr. Garcia signed an "Application for Employment" seeking a job with The AP as a staff photographer, signed a W-4 and other and tax forms, worked a 40-hour week, submitted time sheets and was paid for overtime, was reimbursed for expenses, had an AP e-mail address and an access card for The AP's offices, was paid for accrued vacation time, and repeatedly referred to himself as an "employee" and a "staff photographer" working for The AP.  To the extent Mr. Garcia did not receive medical benefits, that was because under the News Media Guild's (the "Guild")

collective bargaining agreement (which he acknowledged in writing he would be bound by), he was not yet eligible for such benefits when he resigned from The AP.

120.     Moreover, the Answer, Affirmative Defenses, Counterclaims, and Cross Claims that Mr. Garcia filed on July 23, 2009 in this case (the "Cross Claims"), while asserting that he was a freelancer, ignores the fact that in March 2006, during the brief time when Mr. Garcia worked for The AP as a freelancer before The AP hired him as a staff photographer, he signed a freelancer agreement that expressly assigned to The AP any interests, including any copyright interests, in any works he created for The AP.

121.     In early 2009, a dispute arose between The AP and Shepard Fairey regarding Mr. Fairey's unauthorized use of the Obama Photo in the creation and marketing of the Obama Poster and Obama Merchandise.  On February 9, 2009, Mr. Fairey and Obey Giant Art, Inc. filed the instant action against The AP seeking a declaration of non-infringement and fair use.  On March 11, 2009, The AP filed an Answer, Affirmative Defenses and Counterclaims against Mr. Fairey, Obey Giant Art, Inc., Obey Giant LLC, and Studio Number One, Inc. (collectively, "Fairey"), including a claim for infringement of its copyright in the Obama Photo.

122.     It was only after Fairey commenced this action that Mr. Garcia asserted that he owns the copyright in the Obama Photo.  And it was not until July 8, 2009 that Mr. Garcia moved this Court for an order allowing him to intervene in this action, which motion The AP did not oppose.

123.     After this Court granted his motion to intervene, Mr. Garcia filed his Cross Claims alleging that he created the Obama Photo while he allegedly was a freelance photographer for The AP.  Mr. Garcia has materially misstated and/or omitted material facts regarding the terms and conditions of his employment with The AP as well as the nature and

extent of the benefits he received while so employed.  Because Mr. Garcia was a full-time, salaried staff photographer who created the Obama Photo within the scope of his employment, The AP owns all right, title and interest in and to the Obama Photo, including all copyrights.

124.    In light of Mr. Garcia's unfounded claim of ownership to the Obama Photo, The AP has had no choice but to seek a declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, that it is the rightful owner of all rights in and to the Obama Photo, including all copyrights.

## PARTIES

125.    Cross Claim Plaintiff The AP is a New York not-for profit corporation with its principal place of business at 450 West 33rd Street, New York, New York 10001.  The AP is one of the largest and oldest news organizations in the world, serving as a source of news content in all formats – texts, photos, graphics, audio, video and multimedia for millions of members and customers around the world.

126.    Cross Claim Defendant Mannie Garcia is an individual.  Upon information and belief, Mr. Garcia resides at 2608 McComas Avenue, Kensington, Maryland 20895.

## JURISDICTION AND VENUE

127.    This action asserts a Cross Claim arising under the Copyright Act, 17 U.S.C. § 101 et seq.  This Court has federal question jurisdiction over The AP's Cross Claim pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1338(b) and subject matter jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

128.    Upon information and belief, this Court has personal jurisdiction over Mr. Garcia because he has committed tortious acts outside New York causing injury within the State of New York.  Further, this Court has personal jurisdiction over Mr. Garcia because he has chosen to

avail himself of the laws and protection of this Court and The AP's claims arise from the same series of operative facts that Mr. Garcia alleges.

129.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (d).

## FACTUAL BACKGROUND

### The AP

130.     The AP is one of the oldest, largest and most highly regarded news organizations in the world.  Founded in 1846, today it operates as a not-for-profit membership cooperative that gathers and distributes to news outlets worldwide news and information that is informative, educational or otherwise of public interest.

131.     To support its worldwide news mission, The AP employs approximately 3,800 people in approximately 240 locations around the globe, providing thousands of newspapers, radio stations, television stations, news agencies, Web services, government and corporate clients with high-quality news around the clock in the form of text, photos, graphics, audio and video.  On any given day, The AP's content can reach more than half the world's population through its members and clients.

132.     As a not-for-profit news cooperative, The AP applies any incidental profits to its news operations.

133.     The AP's reporters and photographers often put their lives in jeopardy to gain access to and report from dangerous and unstable regions of the world or areas affected by catastrophes and natural disasters.  More than 30 AP journalists have lost their lives in the line of duty since the cooperative was established.  In just the last few years, nearly 20 AP journalists have been incarcerated or otherwise detained, and several more have been harassed, intimidated, beaten or otherwise injured while engaged in news gathering activities.  For example, an AP

photographer recently was imprisoned for two years without any formal legal charges because of his dramatic and poignant photographs of war, and another AP photographer was severely injured in an explosion while working on location.

**The Importance Of Licensing Revenue**

134.     In addition to paying its journalists, photographers and videographers, The AP also must fund pensions and other financial obligations for the men and women who have dedicated their lives to informing the public.  In order to help its staff and their family members cope with catastrophes, natural disasters and conflicts, The AP also supports The AP Emergency Relief Fund, which distributes grants to staffers and their families who are victims of tragedies such as Hurricane Katrina and the recent natural disaster in Myanmar.  <u>See</u> <<u>http://www.ap.org/relieffund/</u>>.  The AP also funds benefits to the families of those AP journalists who have lost their lives while engaged in news gathering activities.

135.     The AP does not generate significant revenue from advertisers or sponsors, nor does it have a large endowment.  As a not-for-profit, membership-based news cooperative, The AP depends for the support of its newsgathering and reporting mission on revenue earned by licensing the intellectual property rights in and to its content.

136.     Because The AP's content is of such high quality and significance and its reports provide such essential information to the public at large, potential users of its content are prepared to pay, and do pay, fair consideration for the right to use The AP's works.

137.     Over the years, The AP has licensed its photographs not only to media organizations, but also to a wide variety of commercial and non-commercial licensees seeking to incorporate The AP's photos into their work.

138.     The AP's licensing program not only allows it to continue operating its full scale, robust and dependable newsgathering services worldwide, but it also enables The AP to pursue efforts to protect the First Amendment and guarantee public access to open government on the local, state and federal levels.

**The AP's Photographers**

139.     The AP's photography department employs approximately 105 staff photographers throughout the United States, with seven to eight staff photographers employed in the Washington, D.C. bureau.

140.     The AP's staff photographers work full time based on a 40-hour work week, are paid a salary plus overtime, and work regular shifts.

141.     The AP maintains the right to control, and exercises control, over staff photographers, including where, when, and how they make photographs.

142.     Staff photographers are assigned work daily by The AP's assignment editors and do not have the right to turn down their assignments.

143.     In addition, staff photographers are placed on The AP's weekly schedules and complete weekly timesheets to account for their time and get paid overtime.

144.     Staff photographers are eligible to join the Guild upon hire.

145.     Regardless of whether or not they actually become dues-paying members of the collective bargaining unit represented by the Guild, The AP's staff photographers are subject to the terms and conditions of the Guild's collective bargaining agreement, which makes them eligible to receive all the rights and privileges under the agreement, including without limitation receiving health insurance benefits after working for The AP for three continuous months.

146.     In addition, pursuant to Article 30 of the Guild's collective bargaining agreement, staffers are free to work for others as long as such other work does not conflict with the interests of The AP or interfere with their full-time position as salaried, staff employees of The AP

147.     Staff photographers receive payment for overtime work, are paid their salary via direct deposit, accrue vacation, are reimbursed for expenses, and have taxes, Social Security, Medicaid, and unemployment insurance deducted from their paychecks.

148.     Staff photographers also receive a building access card, AP e-mail address, and have access to computers, copiers, fax machines, pens and paper, and other equipment and office supplies.

149.     To manage the needs and budget constraints of The AP's photography department, The AP occasionally hires freelance photographers.

150.     Freelance photographers are treated differently from staff photographers.

151.     For example, freelance photographers are paid by the job and do not work regular shifts, unlike staff photographers.

152.     Freelancers also submit invoices for their work, as opposed to weekly timesheets, and can accept or decline assignments.

153.     Freelance photographers are not members of the collective bargaining unit represented by the Guild and are not subject to the collective bargaining agreement with The AP.

154.     Freelancers are not eligible to receive payment of wages for overtime work, do not accrue vacation time, are not reimbursed for expenses, and do not have taxes, Social Security, Medicaid, and unemployment insurance deducted from their payments.

155.    Similarly, freelance photographers do not receive a building access card, AP e-mail address, and do not have access to The AP's computers, copiers, fax machines, pens and paper, and other equipment and office supplies.

**Mr. Garcia's Employment By The AP**

156.    In early March 2006, Mr. Garcia was hired by The AP as a freelance photographer.

157.    At that time, Mr. Garcia signed a written agreement whereby he transferred to The AP "the copyright – and all other rights, title and interest – to the assigned work . . . ."

158.    On March 29, 2006, Mannie Garcia submitted a written "Application for Employment" seeking to be hired for a staff photographer position in The AP's Washington, D.C. bureau.

159.    In his Application for Employment, Mr. Garcia indicated that he was seeking full-time employment as a staff photographer.

160.    Specifically, the signed Application for Employment stated that Mr. Garcia was to work "full-time" for The AP.

161.    In signing the Application for Employment, Mr. Garcia also agreed that his employment will be subject to the collective bargaining agreement, to the extent his position was covered by the Guild's collective bargaining agreement.

162.    In connection with his Application for Employment, Mr. Garcia completed a "New Employee Survey" and "Applicant Flow Survey."  These documents are only completed by staff employees, not freelancers.

163.    Mr. Garcia also signed a written acknowledgment that, if hired, his status would be that of an employee-at-will.

164. That same day, Mr. Garcia completed a package of human resources materials that is given to all staffers for The AP, including an IRS Form W-4 (which he signed as "Employee"), "Employee's Maryland Withholding Exemption Certificate," and "Employment Eligibility Verification" form, and direct deposit enrollment forms, and also submitted two forms of identification as required by the ICE I-9 form, which verifies an individual's eligibility for employment in the U.S.

165. On the same day that he submitted his employment application, Mr. Garcia signed and acknowledged a letter from The AP setting forth the terms of his employment as a staff photographer commencing on April 3, 2006.

166. As set forth in that letter, Mr. Garcia received a salary of $1,225 based on a 40-hour work week.

167. That same day, Mr. Garcia also became a member of the Guild's collective bargaining unit and subject to the terms and conditions of the Guild's collective bargaining agreement with The AP, a copy of which was made available to him.

168. Pursuant to the Guild's collective bargaining agreement, Mr. Garcia, as a staff photographer, was eligible to receive health insurance after three months of employment with The AP.

169. As a staff photographer, Mr. Garcia was subject to The AP's control and supervision, which was exercised on a daily basis by The AP Washington bureau's assignment editors and photo editors.

170. While he was employed by The AP as a staff photographer, the Washington bureau assignment editors directed Mr. Garcia on where, when and how to make photographs.

171. While he was employed by The AP as a staff photographer, the Washington bureau photo editors evaluated the photos that Mr. Garcia submitted, decided which ones to make available to The AP's subscribers, and, if they decided that none of the photographs he had submitted were acceptable, directed him to submit additional photos for consideration by the editor.

172. Also while he was employed by The AP as a staff photographer, Mr. Garcia was listed as a staff photographer on the Washington bureau's weekly schedule.

173. Mr. Garcia completed weekly time sheets while he was employed by The AP as a staff photographer so that he could be paid for any overtime hours that he worked in excess of a 40-hour week.

174. Mr. Garcia recorded and was paid for such regular wages and overtime hours while he was employed by The AP as a staff photographer.

175. In addition to his weekly salary and overtime payments, while he was employed as a staff photographer, Mr. Garcia received payment from The AP for accrued vacation time.

176. Mr. Garcia also was reimbursed for expenses while employed by The AP as a staff photographer.

177. While he was employed by The AP as a staff photographer, Mr. Garcia had federal, state, and local taxes deducted from his paycheck, along with amounts for Social Security, Medicaid, and unemployment insurance.

178. Mr. Garcia completed a W-4 form and was issued an IRS form W-2 by The AP for submission with his tax return for 2006, covering the period during which he was employed by The AP as a staff photographer, which indicated the wages and overtime wages he received.

179.     As a staff photographer for The AP, Mr. Garcia also received a building access card for The AP's offices.

180.     While employed as a staff photographer for The AP, Mr. Garcia was assigned an AP e-mail address, which The AP's editors used to communicate with him about his assignments.

181.     As a staff photographer, Mr. Garcia was given access to computers, copiers, fax machines, pens and paper, and other office supplies and equipment provided by The AP.

182.     While employed as a staff photographer, Mr. Garcia was offered the use of The AP's photographic equipment.

183.     Mr. Garcia chose to use his own computer and photographic equipment while employed by The AP.  Upon information and belief, this choice was due in part to Mr. Garcia's preference for his own equipment, including his own Nikon camera and Apple computer.

184.     As a staff photographer, Mr. Garcia had access to and used The AP's facilities, including the "ready room" where the staff photographers' schedules, including Mr. Garcia's, were posted weekly.

185.     Mr. Garcia could also access the schedules for staff photographers through The AP's Intranet site.

186.     While employed by The AP as a staff photographer, Mr. Garcia used the staff photographers' ready room, including using it to (i) transmit to The AP's photo editors the photos that he had been assigned to take, (ii) change equipment batteries, and (iii) store items in one of the lockers that were made available there for the staff photographers to use.

187.     While employed by The AP, Mr. Garcia repeatedly referred to himself as an "employee" and a member of The AP's staff.

188.     Because Mr. Garcia worked as a full-time, salaried staff photographer for The AP, any photographs taken by him while on assignment for The AP are The AP's property, including without limitation the Obama Photo.

**The Obama Photo**

189.     While working as staff photographer for The AP in April 2006, Mr. Garcia was assigned by The AP's assignment editor to cover an event at the National Press Club headlined by actor George Clooney, who spoke about his then-recent visit to war-torn Darfur and released video footage from his trip.

190.     The event was also attended by, among others, Senator Sam Brownback and then-Senator Barack Obama, who had not yet announced his candidacy for the Presidency of the United States.

191.     Senators Brownback and Obama had co-sponsored a bill, titled The Darfur Peace and Accountability Act, which sought to increase funding for peacekeeping operations in Sudan.

192.     At the April 27, 2006 National Press Club event, Mr. Garcia took several photographs of now-President Obama, including the Obama Photo.

193.     When Mr. Garcia transmitted the Obama Photo to The AP's Washington bureau photo editor later that day, in the caption and metadata for the Obama Photo he entered "STF" (i.e., "Staff") in the "Byline Title" field, as required by The AP for all photos taken by staff photographers, rather than the "STR" (i.e., "Stringer") designation which was used solely for photos taken by stringers (i.e., freelance photographers).

194.     Also upon information and belief, Mr. Garcia entered "Associated Press" in the credit field for the Obama Photo.

195.     The AP subsequently obtained Registration No. VA 1-356-885 for the Obama Photo.

## Mr. Garcia's Resignation

196.     In May 2006, Mr. Garcia was assigned by The AP's Washington bureau assignment editor to photograph Neil Volz at a court hearing.  Mr. Volz was accused and eventually convicted of wire fraud and violating House of Representatives' ethics rules in connection with the Jack Abramoff investigation.

197.     Mr. Garcia took a photo of an individual whom he misidentified as Mr. Volz, which photo was initially distributed over The AP's wire service to its member news organizations.

198.     The AP learned later that day that Mr. Garcia had misidentified the individual in the photo as Mr. Volz, when he was not, after another staff photographer who had been assigned by The AP to cover a different entrance to the courthouse was able to confirm directly that the person who he had photographed was in fact Mr. Volz.  This led to a "photo kill," meaning the elimination of Mr. Garcia's misidentified photo from The AP's wire service.

199.     As a result of this incident, Mr. Garcia resigned from The AP on May 8, 2006.

200.     In his resignation letter, Mr. Garcia stated that "[e]ffective immediately I submit my resignation as Staff Photographer for misidentifying a man I thought was Mr. Neil Volz …."

201.     Upon information and belief, at the time of his resignation, Mr. Garcia knew and understood that he was a staff photographer rather than a freelance photographer.

202.     In June 2006, Mr. Garcia wrote a letter to The AP asking to be reinstated to his position as a staff photographer, repeatedly referring to himself as an "employee" who sought his "job" back.  That request was denied.

203.     At no time prior to the dispute between The AP and Fairey regarding the Obama Photo did Mr. Garcia ever refer to his employment by The AP in April-May 2006 as being in the capacity of a freelancer.

204.     At no time prior to the dispute between The AP and Fairey regarding the Obama Photo did Mr. Garcia ever contend that he owned the copyright in and to the photos that he created on April 27, 2006 at the National Press Club.

**Mr. Garcia's Claim To The Obama Photo**

205.     Mr. Garcia claims that he owns the Obama Photo and has obtained Registration No. VA1-665-426 for the Obama Photo.  Mr. Garcia's claim is based on material misrepresentations of fact and omissions of fact regarding the nature of his employment relationship with The AP.

206.     Mr. Garcia's claim of ownership in the Obama Photo is in direct conflict with The AP's claim of ownership in the Obama Photo, and with his own employment history and admissions regarding his employment status.

**FIRST COUNTERCLAIM – DECLARATORY JUDGMENT**
(28 U.S.C. §§ 2201 and 2202)

207.     The AP incorporates by reference ¶¶ 1-206 above as if fully set forth herein.

208.     Mannie Garcia improperly obtained copyright registration in the Obama Photo, Registration No. VA1-665-426 (the "Unauthorized Registration").  Specifically, Mr. Garcia falsely misrepresented in his application for such registration that he is the sole owner of the copyright in the Obama Photo, despite knowing full well that The AP is the sole owner of the copyright in the Obama Photo because Mr. Garcia created it within the scope of his employment by The AP as a full-time, salaried staff photographer.  Such conduct constitutes fraud on the U.S. Copyright Office.

209.    As such, The AP requests that this Court declare that the Unauthorized Registration was obtained through fraud and thus not subject to copyright protection under 17 U.S.C. § 409, and order the U.S. Copyright Office to cancel the Unauthorized Registration.

210.    In addition, The AP requests that this Court declare that The AP owns the copyright in and to all of the photographs taken by Mr. Garcia for The AP, including the ones he took in March 2006 while he was a freelance photographer who assigned all of his interests in the photographs to The AP, and the photographs he took in April and May 2006 while he was a full-time salaried employee of The AP as work for hires.

211.    By reason of the foregoing, there now exists between The AP and Mr. Garcia an actual and justiciable controversy concerning their respective rights in and to the Obama Photo, requiring declaratory relief.

212.    The aforesaid declaration is necessary and appropriate at this time to affirm The AP's right to continue to make use of the Obama Photo.

213.    The AP has no adequate remedy at law.

214.    Accordingly, The AP seeks, pursuant to 28 U.S.C. §§ 2201 and 2202, a judgment from this Court that the Unauthorized Registration is invalid and should be cancelled and that The AP owns the copyright in and to all of the photographs taken by Mr. Garcia for The AP.

**PRAYER FOR RELIEF**

215.    The AP incorporates by reference ¶¶ 1-214 above as if fully set forth herein.

WHEREFORE, The AP requests:

(a)    That the Cross Claims and each Count thereof, as related to The AP, be dismissed with prejudice;

(b)     That the Court declare that The AP, and not Mr. Garcia, holds a valid copyright in and to the Obama Photo;

(c)     That the Court order the U.S. Copyright Office to cancel the Unauthorized Registration;

(d)     That the Court declare that The AP owns the copyright in and to all of the photographs taken by Mr. Garcia for The AP.

(e)     An award of The AP's costs and disbursements of this action, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117; and

(f)     That the Court grants such other, further, and different relief as the Court deems just and proper.


Dated:     New York, New York
           August 14, 2009

                              KIRKLAND & ELLIS LLP


                              By: _____/s/ Dale Cendali_____
                                   Dale M. Cendali
                                   Claudia Ray

                              601 Lexington Avenue
                              New York, New York 10022
                              Tel: (212) 446-4800
                              Fax: (212) 446-4900

                              *Attorneys for Defendant/Counterclaim*
                              *Plaintiff and Cross Claim*
                              *Plaintiff/Defendant*
                              THE ASSOCIATED PRESS

# EXHIBIT A

