# Exhibit A

to

Declaration of Dale M. Cendali

Dockets.Justia.com

Dale M. Cendali
Claudia Ray
Brendan T. Kehoe
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
dale.cendali@kirkland.com
claudia.ray@kirkland.com
brendan.kehoe@kirkland.com

*Attorneys for Defendant, Counterclaim Plaintiff and Cross Claim Plaintiff/Defendant*
THE ASSOCIATED PRESS

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SHEPARD FAIREY and OBEY GIANT ART, INC.,**<br><br>        **Plaintiffs,**<br><br>  **v.**<br><br>**THE ASSOCIATED PRESS,**<br><br>        **Defendant and**<br>        **Counterclaim Plaintiff,**<br><br>  **v.**<br><br>**SHEPARD FAIREY, OBEY GIANT ART, INC., OBEY GIANT LLC, STUDIO NUMBER ONE, INC., and ONE 3 TWO, INC. (d/b/a OBEY CLOTHING)**<br><br>        **Counterclaim Defendants.**<br><br>**And**<br><br>**MANNIE GARCIA,**<br><br>        **Defendant, Counterclaim Plaintiff and Cross Claim** | Case No.:      09-1123 (AKH)<br><br>      ECF Case<br><br>**THE ASSOCIATED PRESS'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** |

|                                               |
|-----------------------------------------------|
| **Plaintiff/Defendant,**                      |
| **v.**                                        |
| **SHEPARD FAIREY AND OBEY GIANT**             |
| **ART, INC.,**                                |
|                                               |
| **Counterclaim Defendants,**                  |
|                                               |
| **And**                                       |
|                                               |
| **THE ASSOCIATED PRESS,**                     |
|                                               |
| **Cross Claim**                               |
| **Plaintiff/Defendant.**                      |

Defendant, The Associated Press (hereinafter "The AP"), by and through its attorneys, Kirkland & Ellis LLP, hereby answers the Amended Complaint of Plaintiffs Shepard Fairey ("Fairey") and Obey Giant Art, Inc. ("Obey Giant Art") (collectively, "Plaintiffs"), in this action, dated October 16, 2009, as follows:

## <u>NATURE OF THE ACTION</u>

1.      Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 1 of the Complaint and therefore denies the same, except admits that Plaintiffs have asserted claims for declaratory and injunctive relief.

2.      Denies the allegations contained in ¶ 2 of the Complaint, except admits that The AP has asserted that Plaintiffs have created derivative works that infringe The AP's rights in and to one or more of its copyrighted works, and further admits that Plaintiffs have asserted claims for declaratory and injunctive relief which seek, among other things, a declaration that Plaintiffs have not infringed The AP's copyrights.

**PARTIES**

3.       Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 3 of the Complaint and therefore denies the same.

4.       Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 4 of the Complaint and therefore denies the same.

5.       Denies the allegations contained in ¶ 5 of the Complaint, except admits that its principal place of business is located in New York, New York and further admits that it is one of the largest, oldest and most prominent news-gathering organizations in the world.

**JURISDICTION AND VENUE**

6.       States that the allegations contained in ¶ 6 of the Complaint are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, admits that this Court has subject matter jurisdiction over Plaintiffs' claims.

7.       States that the allegations contained in ¶ 7 of the Complaint are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, admits that this Court has personal jurisdiction over The AP.

8.       States that the allegations contained in ¶ 8 of the Complaint are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, admits that venue is proper in this District.

**FACTUAL ALLEGATIONS**

9.       Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 9 of the Complaint and therefore denies the same.

- 3 -

10.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 10 of the Complaint and therefore denies the same.

11.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 11 of the Complaint and therefore denies the same.

12.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 12 of the Complaint and therefore denies the same.

13.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 13 of the Complaint and therefore denies the same.

14.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 14 of the Complaint and therefore denies the same, except admits that a photographer named Mannie Garcia was employed by The AP as a staff photographer in 2006, and further admits that Mr. Garcia took photographs of then-Senator, now-President Barack Obama ("President Obama") at an event held at the National Press Club on April 27, 2006, while on assignment for The AP.

15.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 15 of the Complaint and therefore denies the same, except admits that among the photographs that Mr. Garcia took of President Obama at the National Press Club on April 27, 2006 was a photograph depicting President Obama looking up and to his left.

16.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 16 of the Complaint and therefore denies the same, except admits that Fairey has publicly stated that he has created various posters and other

merchandise depicting President Obama, which posters were based on a photograph for which The AP owns the copyright.

17.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 17 of the Complaint and therefore denies the same, except admits that Fairey has publicly stated that he has created various posters and other merchandise depicting President Obama, which posters were based on a photograph for which The AP owns the copyright.

18.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 18 of the Complaint and therefore denies the same, except admits that Fairey has publicly stated that he has created various posters and other merchandise depicting President Obama, which posters were based on a photograph for which The AP owns the copyright.

19.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 19 of the Complaint and therefore denies the same, except admits that Fairey has publicly stated that he has distributed various posters and other merchandise depicting President Obama, which posters were based on a photograph for which The AP owns the copyright.

20.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 20 of the Complaint and therefore denies the same.

21.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 21 of the Complaint and therefore denies the same.

22.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 22 of the Complaint and therefore denies the same.

23.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 23 of the Complaint and therefore denies the same.

24.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 24 of the Complaint and therefore denies the same, except admits that Fairey has publicly stated that he has created various works depicting President Obama based on a photograph for which The AP owns the copyright.

25.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 25 of the Complaint and therefore denies the same.

26.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 26 of the Complaint and therefore denies the same, except admits that President Obama was elected on November 4, 2008.

27.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 27 of the Complaint and therefore denies the same.

28.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 28 of the Complaint and therefore denies the same.

29.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 29 of the Complaint and therefore denies the same, except admits that Fairey has publicly stated that he has created various posters that were based on a photograph for which The AP owns the copyright.

30.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 30 of the Complaint and therefore denies the same, except admits that an individual named James Danziger has posted material on the Internet

discussing Plaintiffs' posters depicting President Obama and the works owned by The AP on which such posters were based.

31.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 31 of the Complaint and therefore denies the same, except admits that an individual named Michael Cramer has posted material on the Internet discussing Plaintiffs' posters speculating as to the source of the images depicted in Plaintiffs' posters of President Obama.

32.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 32 of the Complaint and therefore denies the same, except admits that Mr. Danziger has posted material on the Internet discussing Plaintiffs' posters speculating as to the source of the images depicted in Plaintiffs' posters of President Obama.

33.     Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 33 of the Complaint and therefore denies the same, except admits that an individual named Tom Gralish has posted material on the Internet discussing Plaintiffs' posters speculating as to the source of the images depicted in Plaintiffs' posters of President Obama.

34.     Denies the allegations contained in ¶ 35 of the Complaint, except admits that on or about January 29, 2009, The AP attempted to contact Fairey regarding his unauthorized use of its photographs in creating Plaintiffs' posters depicting President Obama.

35.     Denies the allegations contained in ¶ 36 of the Complaint, except admits that on January 29, 2009 in-house counsel for The AP telephoned Fairey's studio

but was unable to speak with him, and further admits that an individual claiming to represent Fairey called The AP's in-house counsel on January 30, 2009, during which call The AP's in-house counsel informed Fairey's representative that The AP was aware that a third-party had used technology to determine the source of the photo used to create *Obama Hope*, which was owned by The AP. Further admits that The AP told Fairey's representative that it expected Fairey to provide attribution and compensation for the use of the photo consistent with The AP's licensing practices.

36.     Denies the allegations contained in ¶ 37 of the Complaint, except admits that on or about February 3, 2009 in-house counsel for The AP spoke with Plaintiffs' counsel, during which conversation Plaintiffs' counsel proposed a standstill agreement until February 6, 2009 to discuss a license agreement and The AP readily agreed to the proposal.

37.     Denies the allegations contained in ¶ 38 of the Complaint, except admits that on February 4, 2009, The AP's news department independently prepared and transmitted a news article with the headline "AP alleges copyright infringement of Obama image" and refers the Court to that news article, which document speaks for itself.

38.     Denies the allegations contained in ¶ 39 of the Complaint, except admits that The AP's news department independently prepared and transmitted the February 4, 2009 news article entitled "AP alleges copyright infringement of Obama image," which document speaks for itself.

39.     Denies the allegations contained in ¶ 40 of the Complaint, except admits that The AP's in-house counsel sent an e-mail to Plaintiffs' counsel on February

6, 2009, after Plaintiffs' counsel failed to respond to earlier communications stating that while The AP preferred an amicable resolution, it intended to file suit on Tuesday, February 10, 2009 if the parties were unable to resolve matters before then.

## FIRST CAUSE OF ACTION

40.     Repeats and realleges each and every response to ¶¶ 1-40 above as if fully set forth herein.

41.     States that the allegations contained in ¶ 42 of the Complaint are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, admits that there is a dispute between the parties as to whether the various unauthorized posters created by Plaintiffs using The AP's copyrighted photograph infringe The AP's rights in and to such photograph.

42.     Denies the allegations contained in ¶ 43 of the Complaint.

## SECOND CAUSE OF ACTION

43.     Repeats and realleges each and every response to ¶¶ 1-43 above as if fully set forth herein.

44.     States that the allegations contained in ¶ 45 of the Complaint are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, admits that there is a dispute between the parties as to whether the various unauthorized posters created by Plaintiffs using The AP's copyrighted photograph infringe The AP's rights in and to such photograph and are not fair use.

45.     Denies the allegations contained in ¶ 46 of the Complaint.

46.     Denies the allegations contained in ¶ 47 of the Complaint, except admits that prior to Plaintiffs' creation of their posters, The AP had published photographs of President Obama which were taken by Mr. Garcia.

47.     Denies the allegations contained in ¶ 48 of the Complaint.

48.     Denies the allegations contained in ¶ 49 of the Complaint.

49.     Denies the allegations contained in ¶ 50 of the Complaint.

## DEFENDANT'S AFFIRMATIVE DEFENSES

### FIRST DEFENSE

50.     The Complaint fails to state a claim upon which relief may be granted.

### SECOND DEFENSE

51.     Plaintiffs' claims are barred in whole or in part by the doctrines of estoppel and unclean hands.

## DEFENDANT'S COUNTERCLAIMS

### NATURE OF THE ACTION AND RELIEF SOUGHT

52.     The AP's claims arise out of Plaintiffs' and Counterclaim Defendants' willful and blatant violation of The AP's copyright in a photograph of President Obama, taken by The AP staff photographer Mannie Garcia in April 2006 (the "Obama Photo").  Counterclaim Defendants have used the Obama Photo without The AP's consent in violation of the Copyright Act of 1976, as amended.  Namely, Shepard Fairey, Obey Giant Art, Inc., Obey Giant LLC, Studio Number One, Inc., and One 3 Two, Inc. (d/b/a Obey Clothing) ("Obey Clothing") (all counterclaim defendants together, "Counterclaim Defendants" or "Fairey"), fully aware that the Obama Photo was

a copyrighted image, misappropriated The AP's rights in that image by developing a series of posters and other merchandise based on the Obama Photo (the "Infringing Works") and selling such merchandise through various distribution channels.

53. The Infringing Works copy all the distinctive and unequivocally recognizable elements of the Obama Photo in their entire detail, retaining the heart and essence of The AP's photo, including but not limited to its patriotic theme. As the following side-by-side comparison illustrates, the striking similarity between The AP's copyrighted image (displayed below on the left) of President Obama and the poster that Fairey made based on that image (displayed below on the right) is patently obvious:



The AP's Obama Photo          Fairey's Infringing Work

A true and correct copy of this side-by-side comparison is attached as **Exhibit A**.

54. While Counterclaim Defendants have attempted to cloak their actions in the guise of politics and art, there is no doubt that they are profiting handsomely from their misappropriation. As just one of myriad examples of Counterclaim Defendants' commercialization of the Infringing Works, Obey Giant Art's Web site <http://www.obeygiant.com/store> sells a $60 sweatshirt (depicted below)

bearing an image derived from the Obama Photo, in blatant disregard of The AP's rights, although it appears that Obey Giant Art removed the sweatshirt from its Web site after The AP filed its original Answer, Affirmative Defenses, and Counterclaims ("Counterclaims") on March 11, 2009.



55.     In addition, upon information and belief, Obey Clothing has manufactured and sold hundreds of thousands of infringing T-shirts and related items, earning revenues from the Infringing Works.

56.     The following images depict Counterclaim Defendants' infringing T-shirts — yet another example of the commercial nature of the Infringing Works:



57.    Moreover, upon information and belief, Counterclaim Defendants have authorized and made revenues and royalties from the sale of T-shirts bearing only the infringing image of President Obama without the words "Hope" or "Progress."



58.    Nowhere in Fairey's Complaint for a declaratory judgment and other relief does it mention that Counterclaim Defendants have made, and continue to make, substantial revenue from the Infringing Works. According to published reports, however, as of September 2008 alone, Counterclaim Defendants' profits from the reproduction and distribution of the Infringing Works had already exceeded $400,000. Upon information and belief, in the intervening months, and with the publicity generated by this lawsuit, Plaintiffs' profits from the reproduction, distribution and sale of copies of the Infringing Works have far exceeded the level they had reached in September 2008.

59.    Fairey could have selected from any one of countless images of President Obama in making his posters and other merchandise, or simply drawn him from life or taken his own photograph to use for his posters and other merchandise. Instead, Fairey was drawn to the unique qualities of this particular photograph, made distinctive by Mr. Garcia's creative and artistic input, including (1) his deliberate selection of a

specific moment in time to capture President Obama's expression; (2) his choice in using a particular type of lens and light for optimal impact; and (3) his careful and unique composition of the photograph. These facts, combined with Mr. Garcia's experience, skill and judgment, resulted in the creation of a distinctive image of a unique moment and expression of President Obama.

60.     The Infringing Works do not alter any of the distinctive characteristics that make the Obama Photo so striking — from the selection of subject matter, to the composition, to the exacting details of the photo. All the recognizable elements remain completely and unmistakably intact in the Infringing Works, including the angle and slant of President Obama's head, and his gaze and expression; the contrast, focus, and depth of field of the photograph; as well as the shadow lines created by the lighting in the original photo. Fairey even used the red, white and blue flag imagery that Mr. Garcia worked to capture in the background of The AP's photo. Fairey has done nothing that would excuse his blatant copying of, and creation of derivative works based on, the Obama Photo without first obtaining a license to use that photograph from The AP and agreeing to provide attribution to Mr. Garcia.

61.     As is detailed below, Fairey's use of The AP's Obama Photo without notice, credit or compensation to the copyright owner is part and parcel of his willful practice of ignoring the property rights of others for his own commercial advancement. As is also detailed below, Fairey's practice contrasts dramatically with his aggressive and hypocritical enforcement against others of his own intellectual property rights. This highlights Fairey's knowing willfulness here and shows that his use of The AP's Obama Photo is anything but fair.

62.     Simply put, the fair use doctrine cannot be contorted to permit Fairey to wholly replicate a photographer's prescient photograph and exploit it for his own commercial benefit in utter disregard of The AP's long-established licensing program, which provides needed revenue to support The AP's not-for-profit mission of reporting the news as well as funding The AP's charitable efforts.

63.     Licensing is an important source of revenue for content creators, be they news or entertainment companies. This is especially true for The AP and particularly in these difficult times.  As a news agency, licensing of content is fundamental to The AP's existence.  The rule of law that Fairey argues here essentially would permit someone to take and commercialize a content owner's property without attribution or reasonable compensation, undermining the long-established practice of using such revenue streams to support the ongoing creation of new content.

64.     To create such a rule harming content owners is unnecessary as licensing programs already exist that strike a fair balance between the rights of the original content owner and the newcomer who wishes to use existing content to make a derivative work.  Here, The AP had made every effort amicably to enter into a license and avoid litigation but, as detailed below, in the midst of discussions Fairey jumped the gun and filed this lawsuit anticipatorily in an attempt to gain a procedural advantage.

65.     In light of Counterclaim Defendants' willful, unauthorized use of The AP's Obama Photo, The AP has no choice but to assert claims for damages and injunctive relief based on Counterclaim Defendants' copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq., and violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202, as well as a declaratory judgment pursuant

to 28 U.S.C. §§ 2201 and 2202 that Counterclaim Defendants have no copyrights in the Infringing Works.

PARTIES

66.     Counterclaim Plaintiff The AP is a New York not-for-profit corporation with its principal place of business at 450 West 33rd Street, New York, New York 10001.  The AP is one of the largest and oldest news organizations in the world, serving as a source of news content in all formats — text, photos, graphics, audio, video and multimedia.

67.     Counterclaim Defendant Shepard Fairey is an individual who resides at 1331 West Sunset Boulevard, Los Angeles, California 90026.  He is an artist, graphic designer, merchandiser and business owner.

68.     Counterclaim Defendant Obey Clothing is a California corporation located at 2313 Susan Street, Santa Ana, California 92704.  Upon information and belief, Obey Clothing is the exclusive licensee of Obey Giant LLC for the use of Fairey's trademarks and designs on clothing.

69.     Counterclaim Defendant Obey Giant Art is a California corporation located at 1331 West Sunset Boulevard, Los Angeles, California 90026. Obey Giant Art engages in the business of selling and distributing Fairey's artwork, graphic designs and merchandise.

70.     Counterclaim Defendant Obey Giant LLC is a California limited liability corporation located at 1331 West Sunset Boulevard, Los Angeles, California 90026.  Upon information and belief, Obey Giant LLC engages in the business of selling and distributing Fairey's artwork, graphic designs and merchandise.

71.     Counterclaim Defendant Studio Number One, Inc. ("Studio One")

is a California corporation located at 1331 West Sunset Boulevard, Los Angeles,

California 90026.  Upon information and belief, Studio One engages in the business of

corporate brand identity and manages the Obey® and Shepard Fairey brands, as well as

distributing Fairey's artwork, graphic designs and merchandise.

<u>JURISDICTION AND VENUE</u>

72.     This action asserts counterclaims arising under the Copyright Act,

17 U.S.C. § 101 <u>et seq.</u>, and the DMCA, 17 U.S.C. § 1202.  This Court has federal

question jurisdiction over The AP's counterclaims pursuant to 28 U.S.C. §§ 1331,

1338(a) and 1338(b) and subject matter jurisdiction pursuant to the Declaratory Judgment

Act, 28 U.S.C. §§ 2201 and 2202.  This Court also has subject matter jurisdiction over

The AP's state law claims pursuant to the principles of pendant jurisdiction under

28 U.S.C. § 1367(a).

73.     Upon information and belief, this Court has personal jurisdiction

over all Counterclaim Defendants because they have committed tortious acts outside New

York causing injury within the State of New York, regularly solicit business in New

York, and derive substantial revenue from interstate commerce.  Upon information and

belief, this Court also has personal jurisdiction over all Counterclaim Defendants because

they transact business in New York.  Additionally, this Court has personal jurisdiction

over Obey Clothing because it contracts to supply goods or services in New York.

Further, this Court has personal jurisdiction over Fairey and Obey Giant Art because they

have chosen to avail themselves of the laws and protections of this Court and The AP's

claims arise from the same series of operative facts that Fairey and Obey Giant Art allege.

74.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (d).

FACTUAL BACKGROUND

<u>The AP</u>

75.     The AP is one of the oldest, largest and most highly-regarded news organizations in the world.  Founded in 1846, today it operates as a not-for-profit membership cooperative that gathers and distributes to news outlets worldwide news and information that is informative, educational or otherwise of public interest.

76.     To support its worldwide news mission, The AP employs approximately 3,800 people in approximately 240 locations around the globe, providing thousands of newspapers, radio stations, television stations, news agencies, Web services, government and corporate clients with high-quality news around the clock in the form of text, photos, graphics, audio and video.  On any given day, The AP's content can reach more than half the world's population through its members and clients.

77.     The AP must invest significant resources to create and deliver this enormous volume of consistently high-quality reports.  The AP's journalists are actively engaged in gathering and reporting news, including textual, visual and audio materials. Access to information is crucial for these journalists, who must be present to the greatest extent possible at the moment when news occurs in order to capture it.  This requires them to travel quickly to the places where news is expected to happen, overcoming many obstacles and enduring significant hardships and risks to make sure that they are in a

position to capture newsworthy events as they happen and transmit their original material immediately to an AP center for editing and distribution.

78.　　As a not-for-profit news cooperative, The AP applies any incidental profit to its news operations.

79.　　The AP's commitment is not limited to time and money. Its reporters and photographers often put their lives in jeopardy to gain access to and report from dangerous and unstable regions of the world or areas affected by catastrophes and natural disasters. More than 30 AP journalists have lost their lives in the line of duty since the cooperative was established. In addition, in the last few years alone, nearly 20 AP journalists have been incarcerated or otherwise detained, and at least several more have been harassed, intimidated or beaten. Most recently, a photographer from The AP was imprisoned for two years without any formal legal charges because of his dramatic and poignant photographs of war.

80.　　The AP's news gathering activities require it, often at great expense, to remain a strong advocate for the First Amendment and openness to public records in the United States and in other countries; to protect its journalists who have been detained or imprisoned in the course of their duties; and to provide both security to journalists stationed in conflict zones and comfort to their families.

81.　　Each story that The AP reports, whether in text, visual, audio, or graphical form, represents and reflects the efforts of reporters on the ground. With intimate knowledge of their beats and sources, reporters spend many hours — if not weeks — getting their stories. In doing so, they benefit from The AP's international physical presence, as well as its freedom of information actions, transparent editorial

standards, editorial checks and balances, and efforts that help to safeguard journalists from threats to their safety and defend journalists from incarceration. It is for all of these reasons that the public has come to rely upon The AP to inform it about the most significant events occurring around the world.

82.     In addition to paying its journalists, photographers and videographers, The AP also must fund pension and other financial obligations for the men and women who have dedicated their lives, often for relatively modest financial remuneration, to informing the public. In order to help its staff and their family members cope with catastrophes, natural disasters and conflicts, The AP also supports The AP Emergency Relief Fund, which distributes grants to staffers and their families who are victims of tragedies such as Hurricane Katrina and the recent natural disaster in Myanmar. See <http://www.ap.org/relieffund/>. And for those AP journalists who have made the ultimate sacrifice in service of reporting the news, The AP also funds benefits to the families of those brave individuals who have fallen in the line of duty.

83.     As a not-for-profit news organization deeply rooted in American journalistic traditions, no institution has greater interest than The AP in preserving the rights of those who engage in free expression — including the right of journalists and photographers to earn a livelihood from the products of their skill, talent, hard work and dedication. The AP's commitment to these core ideals has not wavered with the passage of time, in the face of adversity, as a result of dramatic changes in technology or on account of changes in the law.

The AP's Photography

84.     The outstanding quality and significance of The AP's efforts has been recognized over the years with numerous awards, including 49 Pulitzer Prizes to

date.  Of these, 30 have been awarded to The AP for its photographic work.  The AP has also earned myriad other awards for its photography.  These awards reflect recognition within the photographic and journalism communities of the extent to which The AP's photographs have captured many significant moments in history in a way that words alone simply cannot, producing images that have become woven into our nation's cultural fabric.

85.     The AP's photographers capture these iconic and newsworthy images through their thoughtful creative process, judgment and expertise.  While photographing events, they carefully seek out those elements that might make a compelling photograph that also is relevant to the story at hand.  Such elements include the choice of camera and lens, the timing and selection of subject matter, the angle, lighting and shadows, depth of field, color contrast, symmetry, scale and focus, as well as capturing peak action, emotion, or any number of other unique visual elements.  It requires the creative talent and ability of the individual photographer to recognize these elements and find a way to create a compelling photograph.

86.     The AP has a rich tradition of covering more than a century and a half of American politics.  For example, The AP is one of the few contemporaneous sources of the text of Abraham Lincoln's Gettysburg Address.  And The AP's photography is synonymous with some of America's most historic moments, often capturing highly original elements in otherwise familiar subjects.  The AP Presidential Exhibit commemorates more than 80 iconic photographs of past U.S. Presidents and their families, including unforgettable photos of the Reagans, the Bushes (I and II), the Clintons, and the Obamas, among others.  See <http://www.ap.org/americanpresident/>.

87.     With respect to politicians, in particular, because they are photographed almost every day, it takes skill and imagination to photograph them in a way that captures and conveys a compelling story.

88.     Among The AP's many distinctive photographs are those covering political events and campaigns. One such example is Scott Applewhite's photograph (depicted below) of President Clinton, taken as he walked to a podium in the Rose Garden of the White House in 1998 to deliver a short statement about the then-impending impeachment inquiry. Although the photograph depicted a public figure in a public and familiar setting, and was covered by the White House Press Corps, Applewhite was able to capture in a single image the enormous impact of the Monica Lewinsky affair on President Clinton as a person as well as a politician. The President had just emerged into view from behind the pillars of the White House, his somber expression punctuated by the long shadows and his just-visible wedding band. It is a foreboding image of a Presidency nearly ended by the shadow of an extra-marital affair. Mr. Applewhite "spotted this angle as photographers were moved to a camera platform and then hung back from the pack waiting for the right moment as President Clinton moved towards [the] podium." See Brian Horton, Guide to Photojournalism 33 (2d ed. 2001).



89.     Another example of The AP's rich history of photographing presidents is shown in the photograph depicted below of former Presidents John Kennedy and Dwight Eisenhower in Camp David as they walked away from a posed photo op to discuss problems created by the Bay of Pigs invasion.  The AP's Paul Vathis took this photograph, a photograph that transcends time, through the use of extraordinary skill, observation, planning and persistence.  After the Press Secretary had declared no more pictures, and other photographers started packing their gear, Mr. Vathis observed the two presidents walking away.  He quickly conceived the image in his mind and skillfully managed to take the shot through the legs of a Secret Service Agent.



90.     As these examples demonstrate, The AP's photographs speak to their audiences in a way that words simply cannot — by conveying visually a unique narrative captured at a specific moment in time.

Dependence on Licensing Revenue

91.     The AP does not generate significant revenue from advertisers or sponsors.  Nor does The AP have a large endowment, as do other large institutions such as museums, private universities or even law schools.  As a not-for-profit, membership-based news cooperative, The AP depends for the support of its newsgathering and reporting mission on revenue earned by licensing the intellectual property rights in and to its content.

92.     Because The AP's content is of such high quality and significance and its reports provide such essential information to the public at large, potential users of its content are prepared to pay, and do pay, fair consideration for the right to use The AP's works.  A vast array of customers under a variety of commercial arrangements directly or indirectly license from The AP the right to access and use its content across a variety of media, genres, geographies and languages.  Some of these customers have licensed rights in and to The AP's content for over a century.

93.     The AP distributes its licensed content through feeds, satellite transmissions, hosted platforms and other means, including, in the case of photography, via a digital photo archive housing more than 10 million images, all of which are readily available for licensing via the Internet.  See < http://www.apimages.com>.  The AP's digital archive is also authorized to license images that belong to third parties, acting as a repository for historic, cultural and other iconic photographs.

94.     Over the years, The AP has licensed its photographs not only to media organizations, but also to a wide range of commercial and non-commercial licensees seeking to incorporate The AP's photos into their work.  The AP has licensed its photos to individuals for use in political campaigns and advertisements, and to publishers, graphic designers, merchandisers and others seeking to incorporate The AP's images into, among other things, books, posters, buttons, T-shirts and other merchandise.  For example, The AP licensed rights to a photograph of President Obama from its digital photo archive for use on a tote bag.

 

The AP Photo                           Licensed Derivative Work

95.     The AP is not unique in licensing images for use in advertising, artistic works and merchandise, including on tote bags, T-shirts, posters, prints, banners and the like.  The talent, skill and effort required to create compelling still images has fostered a vibrant market for professional photography, one on which many photographers have come to rely for their livelihoods.  In addition, many content providers, whether news or entertainment in nature, rely on this revenue to support their activities.  The AP's licensing program not only allows it to continue operating its full scale, robust and dependable newsgathering services worldwide, but it enables The AP to pursue efforts protecting the First Amendment and guaranteeing public access to open government on the local, state and federal levels.

The Obama Photo

96.     On March 29, 2006, The AP hired Mr. Garcia as a full-time, salaried staff photographer.  While working as a staff photographer in April 2006, Mr. Garcia covered an event at the National Press Club headlined by actor George Clooney, who spoke about his then-recent visit to war-torn Darfur and released video footage from his trip.  The event was also attended by, among others, U.S. Senator Sam Brownback and then-Senator Barack Obama, long before he announced his candidacy for the

Presidency. Senators Brownback and Obama had co-sponsored a bill, titled The Darfur Peace and Accountability Act, which sought to increase funding for peacekeeping operations in Sudan.

97. The focus of the contemporaneous coverage of the event — and indeed the headline and text of The AP's story that day — was Clooney's involvement with, and recent trip to, Darfur. Mr. Garcia, however, also focused on then-Senator Obama for several of his photographs, positioning himself in such a way that he was able to illustrate the charismatic junior Senator at a unique and expressive angle against the patriotic backdrop of the American flag.

98. In one of the photographs he took that day, Mr. Garcia consciously and deliberately captured now-President Obama at a specific moment in time, one for which he had patiently waited. The unique composition, angle, center of focus, framing, and depth of field, along with the particular reflection of light, shadow lines and contrast, combined with the particular type of lens that Mr. Garcia used, created a unique image of President Obama, his head slanted slightly to the left, his chin lifted and his eyes fixed off into the distance. A true and correct copy of this photo (the "Obama Photo") is shown below and attached hereto as **Exhibit B**:



The AP holds a copyright registration, Registration No. VA 1-356-885, in the Obama Photo.

99.    Mr. Garcia has described some of the elements that went into capturing the Obama Photo at the National Press Club that day, demonstrating the thought, craft, patience and judgment that he brought to bear on its creation: "I'm on my knees, I'm down low, and I'm just trying to make a nice, clean head shot. And I'm waiting. I'm looking at the eyes. I mean, sure, there's focus, and I want the background to be a little bit soft. I wanted a shallow depth of field. I'm looking and waiting. I'm waiting for him to turn his head a little bit. I'm just patiently making a few pictures here and there, and I'm just looking for a moment when I think is right, and I'm taking some images as I'm going along, and then it happened. Boom, I was there. I was ready." See Interview of Mannie Garcia on National Public Radio, February 26, 2009, available at <http://www.npr.org/templates/story/story.php?storyId=101184444>.

Fairey's History of Misappropriating the Works of Others

100.    Fairey is an artist, graphic designer, merchandiser and business owner who has claimed to specialize in "referencing" pre-existing works to create, among other things, commercial works, including merchandise and posters, and to promote and sell his Obey®-branded products.  Upon information and belief, his efforts began in the 1980s with an image of the late, famous wrestler, Andre the Giant (born André René Roussimoff, May 19, 1945).  Fairey later adorned that image with his brand, Obey® (claimed subject matter of three trademark registrations filed with the United State Patent and Trademark Office, Registration Nos. 2632359, 2762299 and 3282078), and placed it, often illegally, in public spaces in communities across the country, including New York, Boston, Providence and San Diego.

101.    Further demonstrating Fairey's willful disregard for the property rights of others, upon information and belief, he has been arrested more than a dozen times for targeting communities with his graffiti, vandalism and related crimes, most recently in Boston on two outstanding warrants, just three days before filing this lawsuit.

102.    Upon information and belief, Fairey's merchandise is often based in whole or in great part on works misappropriated from other artists, designers and copyright owners.  In fact, at a recent forum, Fairey admitted that he had a "long history" of copyright infringement.  Though Fairey's remarks may have been somewhat tongue-in-cheek, they reflect a shared understanding by Fairey and his audience that Fairey misappropriates the works of others.

103.    As illustrated below, Fairey's willful pattern and practice is to repeatedly copy the works of other artists and photographers without providing, on information and belief, any credit, compensation or attribution to those authors.  For

instance, the photo below on the left, titled *Black Panther*, was taken by photographer

Pirkle Jones in 1968, portraying a Panther at a political rally in Oakland, California.

Below on the right is a poster produced by Fairey. It contains an image that is strikingly

similar to the one created by Mr. Jones, who, upon information and belief, received no

credit, compensation or attribution from Fairey for the use of his work.



Pirkle Jones Photo     Fairey Poster

     104.     Fairey similarly misappropriated the work of Cuban poster artist

Rene Mederos. In so doing, Fairey took a poster that Mr. Mederos created in 1972 and

printed it on T-shirts, as shown in the two images below. Upon information and belief,

Fairey failed to give Mr. Mederos any credit, compensation or attribution for the T-shirt

prior to using Mr. Mederos's work.



Mederos Poster     Fairey's T-shirts

105.     In 1969, Rupert Garcia created a silkscreen print titled *Down with the Whiteness* (shown below on the left), which is featured in the permanent collection of the Fine Arts Museum of San Francisco.  Fairey later misappropriated the image (shown below on the right) and, upon information and belief, simply kept the same graphic design and, using a computer graphics program, substituted the head on the image and replaced the text, without giving any credit, compensation or attribution to Mr. Garcia.



Garcia's Work          Fairey's Work

106.     Upon information and belief, yet another example of Fairey's unauthorized copying is shown below.  Fairey misappropriated a Swiss photographer's image of a woman covering her ears (below on the left), creating an image that was almost identical to the original but for the omission of the original text and the addition of Fairey's "Obey" trademark and the phrase "Obey With Caution."  As with his other works described above, upon information and belief, Fairey gave no credit, compensation or attribution to the original artist.



Swiss Work          Fairey's Work

107.     Fairey's copy-and-paste style is evidenced yet again in a poster he titled *Noveau Black* (pictured below on the right), which, upon information and belief, strikingly takes directly from Austrian artist Koloman Moser's work, titled *Ver Sacrum* (1898) (pictured below on the left).  Once again, on information and belief, Fairey took the original image in its entirety and gave no credit, compensation or attribution to the estate of the original artist.



Moser's Work          Fairey's Work

108.     More recently, upon information and belief, Fairey blatantly used a photograph taken by filmmaker and journalist Edward Nachtrieb (pictured below on the

left) to create the work below (pictured on the right). Upon information and belief, Fairey gave no credit, compensation, or attribution to Mr. Nachtrieb for the use of his photograph.



Nachtrieb's Photo          Fairey's Work

109.     Upon information and belief, Fairey and his clothing brand, Obey Clothing, have even knocked off other clothing brands that cater to the same market of alternative-culture consumers. For example, Fairey and Obey Clothing have copied the influential fuct™ brand of clothing's logo and designs. Upon information and belief, Fairey has not given fuct™ credit or compensation for the use of its style and designs.

 

1996 fuct™ Design          2006 Obey Design

 

1993 fuct™ T-shirt     1996 Fairey Print

110.    Fairey's conduct over the years clearly evidences a willful practice and pattern of ignoring other's rights in and to their own works.  Their work, it appears, is fair game for him to exploit commercially without so much as an acknowledgement.

Counterclaim Defendants' Hypocritical Approach to Intellectual Property Rights

111.    In a striking departure from the casual disregard that Fairey shows for the creative works of others, Counterclaim Defendants act hypocritically and aggressively when it comes to the protection of Fairey's works and enforcement against those who make use of them.

112.    For example, Counterclaim Defendants are quick to use the law to restrict others from using their materials and to preserve their exclusive use of Fairey's designs. Since the late 1990s, Fairey and his related entities have filed at least nine trademark applications, including for the words "SHEPARD FAIREY," "OBEY," and "DISOBEY" and the "OBEY®" design, with the United States Patent and Trademark Office, asserting ownership over those particular words and images.  In other words, through these trademark registrations, Fairey seeks the legal right to prevent others from commercially using these words and phrases.

113.    In so doing, Fairey seeks to protect his commercial interests.  For example, Fairey's current active trademark registrations cover a wide range of

merchandise, including T-shirts, jackets, caps, knit shirts, woven shirts, pants, shorts,

jackets, sweatshirts, sweaters, belts, scarves, beanies, hats, handbags, backpacks, wallets,

leather key chains, stickers, posters, postcards and the like.  With respect to the Obey®

trademark (Registration No. 2632359), Fairey has filed a Section 15 Affidavit claiming

"incontestable" rights in that word and design.

        114.    Counterclaim Defendants also demonstrate a sophisticated

understanding of licensing and copyright protection — with respect to Fairey's own

works — contrasting sharply with Fairey's repeated failure to obtain permission and a

license to use other artists' works.  For example, the ObeyGiant.com Web site allows

fans to download for free certain specific Fairey trademarks and images that promote his

brands, but it does not allow visitors to download any of Fairey's "Photographs," "Fine

Art," or other items.  In other words, Fairey restricts the copying of his own works, even

including an "All Rights Reserved" copyright notice on every page of his Web site.

        115.    The contrast between Fairey's use of others' works and his

approach to copyright enforcement in his own works is further shown with respect to the

very Infringing Works at issue in this case.  During the 2008 presidential campaign,

Fairey offered free licenses to download the "Obama Hope" poster from his website.  See

<http://www.obeygiant.com/ headlines/the-real-deal>.  However, the license was subject

to several restrictions, including that the poster was "not to be used for merchandise or

any other profitable means."  Further, Fairey's Web site also warned that the poster was

the "copyrighted image of Shepard Fairey and OBEY GIANT ART" and that all rights

were "Reserved."

116.     In keeping with Counterclaim Defendants' hypocritical approach to intellectual property rights, notwithstanding their misappropriation and commercialization of other creators' works for their own gain, they are quick to hunt down artists who they believe unlawfully use Fairey's intellectual property, without apparent regard to the principles of fair use that Counterclaim Defendants conveniently espouse in this case. For example, upon information and belief, in March and April 2008 Fairey and his related enterprises sent Texas-based artist Baxter Orr a series of cease-and-desist letters in connection with Orr's creation of a work that borrows from Fairey's Obey® image. Orr's work, titled *Protect Yourself* (bottom right), covered the face of Fairey's *Protect* (bottom left) with a surgeon's mask.



Fairey's Protect          Orr's Protect Yourself

117.     Fairey's first demand letter accused Orr of making "unauthorized use" of Fairey's "copyrighted work" and asserted that Orr's *Protect Yourself* poster infringed the copyright in Fairey's *Protect*. Fairey asserted that Orr's work was "essentially identical" to Fairey's.

118.     In the letter, Fairey further asserted that Orr had "neither asked nor received permission to use" Fairey's work, "nor to make or distribute copies, including electronic copies, of same."

119.     Fairey's letter went on to threaten the artist, stating, "I believe you have willfully infringed our rights under 17 U.S.C. Section 101 et. seq. and could be liable for statutory damages as high as $150,000 as set forth in Section 504(c)(2) therein."

120.     The letter concluded by demanding that Orr either (1) destroy all copies of his *Protect Yourself* works, or (2) surrender them to Fairey's company.  If Orr failed to comply, the letter threatened him with unspecified "further action."

121.     It is noteworthy that Fairey's letter to Orr could just as easily have been sent by The AP to Fairey in this case — if The AP had sent one, which it did not — regarding Fairey's use of The AP's Obama Photo.  In fact, The AP's approach to Fairey's infringement was much more moderate and involved simply calling Fairey's representatives to discuss a reasonable license.  The AP never demanded that Fairey "destroy" or "surrender" his work.

122.     Upon information and belief, when Orr apparently did not capitulate to Fairey's first demand letter, Fairey sent yet another letter to Orr.  In this letter, Fairey's counsel went on to detail exactly how Orr's failure to obtain a license harmed Fairey and his related entities.

> One of the many factors contributing to the value and desirability of my Client's [defined in the letter as "Shepard Fairey and his related entities"] Intellectual Property is the limited licensed uses and his control over such uses.  **Such exclusivity commands a significant premium over the designs supplied by the average designer.  My Client has long required the purchase of a license in connection with a right to use its Intellectual Property on goods, services, advertising, and publicity**.  My Client identifies the permitted uses in a License Agreement which accompanies each license granted.  This agreement governs the use of the Intellectual Property.  People and businesses seek out my Client and his distinctive artwork when they desire to have a certain look to their work and/or to appeal to a certain audience which favors my Client's work.  My Client typically warrants that his licensees acquire exclusive rights in their licensed categories, and they expect my Client to pursue those who are

using the same or confusingly similar marks on their goods and services
and thus diminishing the value of their licenses.  Indeed, it is through
clients and potential clients that your use came to my Client's attention.

(Emphasis added.)

123.    In sharp contrast to Fairey's refusal here to obtain a license to use

The AP's Obama Photo, Fairey's letter went on to detail at length not only the

importance of licensing content from the owners of intellectual property, but also

demanded that Orr agree to license Fairey's image:

**You have not secured a license to use and distribute the Intellectual
Property either for its own uses or in connection with its products and
marketing**.  Specifically, your apparent unlicensed appropriation, use,
copying, dilution, and distribution of the Intellectual Property for your
financial benefit and any other uses, are each infringements and dilutions
of my Client's valuable trademarks and copyrights.  Be advised that your
actions may violate both federal and state unfair competition and
trademark laws.

(Emphasis added.)

124.    The second letter went on to threaten Orr with the filing of a

"complaint in the appropriate court" if the parties could not otherwise reach an

agreement.  The letter noted that "[u]nless and until we reach such an agreement, I must

insist that you immediately cease and desist from all infringing uses of my Client's

Intellectual Property," and that "[a]ll my Client's rights are expressly reserved."

125.    What is even more striking about Fairey's hypocritical approach

with respect to Orr, as compared to his position in this case, is that the second demand

letter to Orr attempted to <u>censor</u> Orr from even telling anyone that Fairey was claiming

infringement.  As this letter demonstrates, Fairey is hardly a champion of the First

Amendment.  Under a seldom-invoked common-law copyright provision incorporated in

the California Civil Code, Fairey's counsel then warned Orr to refrain from publishing

any of Fairey's cease-and-desist letters:

> Finally, I want to call your attention to California Civil Code § 985, which reads in part "Letters and other private communications in writing belong to the person to whom they are addressed and delivered; but they cannot be published against the will of the writer, except by authority of law." Accordingly, I do not expect to see this letter in a public forum and you are not authorized to publish it, including (without limitation) by putting it on the Internet.  This also applies to your posting of my Client's first cease and desist letter online.  Demand is also made that you remove your public copies of my Client's correspondence.

126.    In yet another example of Counterclaim Defendants' hypocritical approach to intellectual property rights that evidences Fairey's willfulness in using The AP's Obama Photo without a license, upon information and belief, just weeks before filing this lawsuit, Obey, Inc. sent online store CafePress.com a cease-and-desist letter asserting that certain merchandise offered for sale through the store infringed an Obey® trademark.  Upon information and belief, CafePress.com had sold a blue-eyed kewpie doll clad in a knit black-and-gold uniform bearing the word "Obey," designed by a Pittsburgh-based graphic designer, which Fairey said infringed his trademark rights in the word "Obey."

127.    Upon information and belief, rather than deal with legal costs, the designer decided to remove the items from sale.  Upon information and belief, in the three months before the items were withdrawn, the designer made less than $70 for the sale of 16 items, 10 of which had "Obey" written on them.

128.    Upon information and belief, Fairey and his related entities routinely police and enforce Fairey's intellectual property rights.  This hypocritical approach highlights the willfulness of his conduct, and also constitutes, inter alia, unclean

hands that should also estop Fairey from claiming that his misappropriation of The AP's

Obama Photo is fair use, free for him to take without having obtained a license.

<u>Counterclaim Defendants' Infringement of Defendant's Copyright</u>

129.     Just as he has done time and time again, Fairey created the

Infringing Works by misappropriating an image that belonged to someone else, in this

case a photograph copyrighted by The AP.  After processing The AP's Obama Photo

through his computer, Fairey proceeded to create and distribute virtually identical copies

of the Obama Photo as his own original creation without proper attribution to Mr. Garcia

and without credit and fair compensation to The AP.

130.     Upon information and belief, after months of Counterclaim

Defendants' attempts to obscure the true source of the Infringing Works, a third party,

using advanced image recognition technology that matches images based on their

distinctive elements, determined in late January 2009 that the Infringing Works were

unmistakably derived from the Obama Photo.

131.     Only then was Fairey forced to admit that he "came across" The

AP's Obama Photo after doing searches on Google Images in January 2008 for images of

President Obama.  Fairey has said that he was looking for an image of Obama that was

"Presidential," and in which Obama was "gazing off into the future, saying, 'I can guide

you.'"  That was exactly what Mr. Garcia had captured in the Obama Photo and exactly

what Fairey took when he copied it.

132.     As his words demonstrate, Fairey deliberately chose to use The

AP's Obama Photo because it captured the essence of what Fairey was looking for, due to

the unique qualities imparted to it by the photographer's own creative input.  In other

words, although Fairey's Google search must have returned dozens, if not hundreds, of

images available on the Internet, Fairey selected the Obama Photo — almost two years after the photograph was originally published — because of its transcendent qualities.

133. Upon information and belief, rather than simply contacting The AP and obtaining permission and a reasonable license, which would have been both easy and relatively inexpensive to do, Fairey proceeded to take all of the unique characteristics of the Obama Photo, copying those distinctive characteristics in their entirety, to create the Infringing Works, without any credit to The AP. Thus, rather than invest the effort to create his own iconic image, or to contact The AP to procure a reasonable license, Counterclaim Defendants elected to free-ride on Mr. Garcia's efforts and creative choices.

134. Fairey's minimal changes to The AP's Obama Photo add nothing to the distinctive characteristics of Mr. Garcia's image. Rather, Fairey essentially has engaged in a form of computerized "paint by numbers" with The AP's copyrighted image — taking the work in its entirety. The amount and substantiality of Counterclaim Defendants' use is unmistakable — it is a wholesale copying of The AP photo.

135. Counterclaim Defendants' use of the Obama Photo cannot be said to serve a different purpose than the original work, or transform the original image into a new expression. Like the creative works of countless of The AP's photographers, each of which convey a unique narrative, the Obama Photo conveys a defining impression of President Obama. The Infringing Works, in turn, convey only what was already present in the Obama Photo — indeed, not only the particular elements, but also the essence of the photo. On information and belief, it was exactly the distinctive qualities in the original that led Fairey to select the Obama Photo in the first place, as opposed to others

he reviewed. Accordingly, the Infringing Works serve exactly the same character and purpose as the Obama Photo in communicating these evocative themes, regardless of whether the Infringing Works were used in a political campaign or sold as commercial merchandise.

136. Counterclaim Defendants' Infringing Works also cannot be characterized as commenting on or criticizing the Obama Photo. In fact, upon information and belief, Counterclaim Defendants failed to disclose The AP and the Obama Photo as the true source of the Infringing Works despite numerous opportunities to do so. Because Fairey never acknowledged The AP or Mr. Garcia as the source of the image, the public had no way of knowing what photo, if any, Fairey used in developing the Infringing Works. Accordingly, any claim that the Infringing Works "comment on" or engage in "criticism of" the Obama Photo or Mr. Garcia's viewpoint or skill is unsupported by the facts. Rather, Fairey's conduct was deliberately calculated to mislead the public as to the source of the distinctive and unequivocally identical elements of the Infringing Works — namely those that were copied in their entirety from the Obama Photo.

137. As detailed above, news photography is an art form that requires skill, artistic judgment, dedication, countless hours of preparation and imagination. The AP's photographers document world events every day through a creative and painstaking journalistic process. Before The AP ever publishes a photograph, it first selects events for journalists to report on and capture, carefully chooses visual elements that will help create a compelling image, composes the relevant visual aspects of a story (based on

experience, training and judgment), selects "the" image or images from multiple options and edits it to tell the full story.

138.    Counterclaim Defendants' unauthorized use of the Obama Photo has caused substantial impairment to the potential market for the original photo, namely, The AP's ability to license its use to both commercial and non-commercial customers across all media, genres, geographies and languages.  This strikes at the heart of The AP's business and is particularly unfair competition in light of Counterclaim Defendants own enforcement efforts with Fairey's intellectual property.

Fairey's and the Other Counterclaim Defendants' Bad Faith Conduct

139.    Fairey and his related entities have routinely engaged in bad faith conduct and practices related to their intellectual property rights and the Obama Photo in particular.  This further highlights the willfulness of Fairey's conduct and the lack of fair use.

140.    First, upon information and belief, Fairey took the Obama Photo from Google Images and, despite Google's clear policy explicitly requiring users to obtain permission from copyright owners prior to use, he admittedly used the photo without ever bothering to obtain The AP's permission or offering it any compensation.

141.    Second, notwithstanding Google's clear copyright policy and Fairey's sophisticated understanding of intellectual property rights, upon information and belief, Fairey stripped away the copyright management information, as defined in 17 U.S.C. § 1202(c).  Upon information and belief, when the Obama Photo is downloaded through Google Images, it is accompanied by the copyright management information depicted below, which identifies The AP as the owner of the copyright in the work and Mr. Garcia as the photographer.  Also upon information and belief, when Fairey

downloaded the Obama Photo through Google Images, it bore this copyright management information, which he stripped from the image.



142.    Third, as described above, Fairey himself has demonstrated by his own actions a sophisticated understanding of intellectual property licensing and enforcement and thus surely knew that he needed a license to use the Obama Photo and to credit The AP and Mr. Garcia for his use — yet he failed to do so.

143.    Fourth, upon information and belief, Fairey and his related entities defrauded the U.S. Copyright Office by failing to state in the application to register the copyright in the Infringing Works (Reg. Nos. VA0001651320, VA0001651318 and VA0001651319) that they were actually derivative works of The AP's Obama Photo.  To obtain a copyright registration, applicants must disclose, and exclude from the registration application, any pre-existing material or material not owned by the applicant — i.e., applicants must disclose whether the work is wholly new or rather is a derivative work based on a pre-existing work.  Upon information and belief, Fairey's copyright applications for the Infringing Works failed to identify the Obama Photo in the "Material

Excluded" section of the applications even though Fairey is now forced to admit that his posters were derived from The AP's Obama Photo. Fairey's failure to properly identify his Infringing Works as derivative of the Obama Photo constitutes fraud on the Copyright Office, further demonstrating Fairey's cavalier attitude towards the intellectual property rights of others and disregard for the copyright laws.

144. Fifth, upon information and belief, in at least one other instance involving circumstances nearly identical to those presented here, Fairey recognized that, contrary to his regular practice of misappropriating the works of others, he was required to obtain permission and give appropriate credit. Specifically, upon information and belief, Fairey obtained permission and gave credit to photographer David Turnley for the use of his photograph to create Fairey's "VOTE" poster, which is pictured below.



Turnley's Photo                                        Fairey's Licensed Work

145. Upon information and belief, Counterclaim Defendants did not distribute the "VOTE" poster virally nor did they sell merchandise incorporating Mr. Turnley's photograph.

146. Sixth, Fairey has licensed photographs from The AP in the past to make art prints and T-shirts, completely undermining his argument in this case that no

such license was needed to create the Infringing Works. Specifically, in December 2008, Fairey licensed the photograph below taken by AP photographer Kevin Frayer of a Palestinian woman peering out from a balcony as she watched Israeli authorities demolish a house in Jerusalem on Wednesday, November 5, 2008. The license granted Fairey the right to print up to 5000 T-shirts and 500 art prints bearing an illustration of the image, which is also pictured below.



The AP's Photograph



Fairey's Work Based on the Licensed AP Photograph

147. Even more recently and prominently, Shepard Fairey used the Associated Press photograph pictured below on the left to create the August 2009 cover

design of *Rolling Stone* magazine, which is pictured below on the right. Upon

information and belief, although Fairey has stated that he was provided with a photograph

to use to create the cover design, he has failed to acknowledge that his design directly

copied an AP photograph. Fortunately, third party Rolling Stone had properly licensed

the photo from The AP and attributed it to AP staff photographer Pablo Martinez

Monsivais on the inside cover of the magazine.



The AP's Photograph        Fairey's Licensed Illustration

148.    These licenses demonstrate that Fairey fully comprehends when a

license is needed to create a derivative work, such as with the images depicted above.

Moreover, they demonstrate that Fairey was able to easily open an account with The AP

in 2008, which he did to license the photo of the Palestinian woman. If Fairey had

approached The AP for a license for the Obama Photo to create the Infringing Works, as

he should have done, it would have been similarly easy for him to license.

149.    There is no reason Fairey could not follow the proper procedure

and license the Obama Photo, which he used to make the Infringing Works.

150.     Lastly, Fairey has engaged in bad faith conduct by jumping the gun and filing this lawsuit anticipatorily in order to gain a procedural advantage.

151.     As soon as The AP learned that the Obama Photo was the source of the Infringing Works, The AP conducted a thorough analysis of the nature and usage of the works before contacting Fairey and his representatives.  In response to The AP's initial inquiry, Fairey's marketing representative contacted The AP's in-house counsel on January 30, 2009, who explained that the use of the Obama Photo in the Infringing Works required permission from The AP and, under The AP's standard licensing procedure, appropriate credit and attribution and the payment of a reasonable fee commensurate with the scope of Fairey's use of The AP's copyrighted work.  The AP's in-house counsel made it clear from the outset that The AP wished to handle the discussion in an amicable manner and that any proceeds that The AP received as compensation for past use of the Obama Photo would be contributed to The AP Emergency Relief Fund.

152.     Fairey's outside counsel then contacted The AP on February 2, 2009 to assert that Fairey's use of the Obama Photo in the Infringing Works was a "fair use" and did not require permission from The AP.  The AP's in-house counsel disagreed with Fairey's counsel, but again made it clear that The AP wished to resolve the matter amicably.  Fairey's counsel requested more time to discuss the matter with his clients.

153.     Fairey's counsel then contacted The AP's in-house counsel again on February 4, 2009, to request additional time — until Friday, February 6 — to discuss the matter with The AP.  Fairey's counsel also proposed a standstill agreement, whereby the parties agreed not to initiate any lawsuit until they spoke on Friday.  This proposal

surprised The AP, as it did not view the matter as anything other than a routine licensing discussion. Accordingly, The AP's in-house counsel readily agreed to the litigation standstill agreement proposed by Plaintiffs' counsel.

154.     Unfortunately, Fairey's counsel never called The AP's in-house counsel on Friday, February 6th, nor did counsel make any further attempt to discuss a licensing arrangement.

155.     In the meantime, The AP was aware that, according to a 2006 press release, the stated mission of Fairey's counsel, the Stanford Fair Use Project, is to "defend 'fair use' rights in a digital environment through declaratory judgment actions." Therefore, The AP was concerned that Fairey had no intention of engaging in further discussions, but was instead likely to rush to file a declaratory judgment action against The AP in order to further Stanford Fair Use Project's mission. Upon information and belief, Fairey's counsel has done so at least on one prior occasion.

156.     This led The AP to grow even more concerned that Fairey was intentionally avoiding discussions and delaying so as to file an unwarranted complaint for declaratory relief. Only after Fairey's counsel engaged in further delay that Friday did The AP's in-house counsel reluctantly notify Fairey's counsel that if the matter was not amicably resolved, it would bring legal action against Fairey in the Southern District of New York on Tuesday afternoon, February 10, 2009. The AP's in-house counsel hoped that this would allow the parties sufficient time to resolve what it still believed at heart was a routine matter, of the sort that is normally resolved in a matter of days.

157.     However, upon information and belief, Fairey was stalling The AP while at the same time busily drafting the Complaint. Fairey's counsel ultimately

reneged on the standstill agreement without ever discussing the matter again with The

AP's in-house counsel and filed the instant lawsuit anticipatorily on Monday, February 9,

2009, without so much as a courtesy e-mail stating that they were planning to bring this

action.

<u>Fairey's Bad Faith Conduct in Filing the Complaint</u>

158.     The AP alleged in its March 11, 2009 Counterclaims that, in a

further act of bad faith, Fairey and Obey Giant Art deliberately misrepresented the source

of the Infringing Works in their Complaint.  Specifically, upon information and belief,

although Fairey was well aware that the Infringing Works were based on the Obama

Photo, Fairey deliberately misidentified in the Complaint another photo taken by Mr.

Garcia, which included an image of the actor George Clooney seated next to President

Obama (the "Clooney Photo"), as the source of the Infringing Works.  A true and correct

copy of the Clooney Photo, attached hereto as **Exhibit C**, is pictured below along with

images of the true Obama Photo and one of Fairey's Infringing Works.

  

Clooney Photo                    Obama Photo                  Obama Hope Poster

159.     Upon information and belief, by misrepresenting the true source of

the Infringing Works, Fairey has engaged in a misguided effort to argue that Fairey made

more substantial changes to the photograph — i.e., that he at least had to crop it — than

he actually did. But a simple comparison of the Clooney Photo to the Infringing Works and the Obama Photo makes clear to even the casual observer that Fairey used the Obama Photo, depicting President Obama sitting alone, as the basis for the Infringing Works. Moreover, it has been widely reported that third-party image recognition software has been used to determine that the Obama Photo was indeed the photo which Fairey used. Unlike the Clooney Photo, both the Obama Photo and the Infringing Works depict exactly the same close-up of President Obama, tightly framed with his head tilted at the same angle, with the same expression on his face and the same focus of his eyes, along with the same lighting and shading. Significantly, in both the Obama Photo and the Infringing Works, Mr. Clooney is nowhere to be seen.

160. Moreover, upon information and belief, when he was interviewed in 2008 about the Infringing Works, Fairey made no mention of cropping Clooney's image from the photograph that he downloaded from Google Images. Nor, upon information and belief, did Fairey make any mention of altering the angle at which President Obama's head was turned, the tilt of President Obama's head, the angle of his gaze, or the reflection of light, shadow lines, contrast, center of focus, framing, or the depth of field of the photograph. Thus, Fairey's misidentification of the Clooney Photo as the source for the Infringing Works can only be understood as a deliberate attempt to obscure the Obama Photo as the true source material for the Infringing Works and to minimize the nature and extent of Fairey's unauthorized copying of the Obama Photo.

Fairey Has Now Admitted that He Fabricated and Destroyed Evidence to Cover Up the True Source Photo

161. The AP's allegations in its March 11, 2009 Counterclaims were wholly correct. Fairey has now admitted that he used the Obama Photo and not the

Clooney Photo to create the Infringing Works. Moreover, Fairey has also admitted that he falsified evidence and destroyed or attempted to destroy documents in a brazen (but unsuccessful) attempt to cover up the true source photo. Fairey's wrongdoing constitutes a fraud upon the Court as it undermines the integrity of the judicial system, in particular the discovery process among the parties.

162. After filing the Complaint, Fairey also issued press statements and gave several interviews in which he insisted that "The AP is showing the wrong photo." Upon information and belief, Fairey was lying all along and has now been forced to admit that these statements were false, as were other statements that Fairey made describing how he cropped the picture of Clooney and then-Senator Obama and made other changes to create the *Hope* and *Progress* posters.

163. Fairey's admissions go to the heart of his case as they demonstrate that Fairey brought this lawsuit for a declaratory judgment of "fair use" under false pretenses by lying about which AP photograph he used to create the Infringing Works.

164. Upon information and belief, Fairey believed his misrepresentations would improve his chances of winning a favorable verdict. More specifically, upon information and belief, by claiming to have used the Clooney Photo, Fairey was attempting to argue that he made more changes to The AP's copyrighted image than he actually did (that he at least had to crop it) and that he took a less substantial portion of the original than he did in reality.

165. In addition, upon information and belief, Fairey thought that a favorable outcome in this case would let him continue his practice of using other people's copyrighted works for profit without giving them credit, compensation, or attribution.

Upon information and belief, Fairey believed his misrepresentations would also allow him and his companies to avoid financial liability for copyright infringement.

166.     Fairey's lies were only discovered as a result of The AP's tireless and costly efforts throughout the discovery phase in this case, including pressing Fairey's counsel for documents regarding the creation of the posters, such as copies of any source images that Fairey used.

167.     Early in discovery, The AP realized that Fairey had produced only scant evidence relating to the creation of the Infringing Works and no electronic copies whatsoever of the source image.  Throughout discovery and the course of numerous oral and written meet and confer discussions between the parties, The AP repeatedly requested the production of these highly relevant documents.  In addition, The AP continually asked Fairey to be more transparent about what had been done to search for responsive documents, which was particularly important because it appeared that certain relevant documents related to the creation of the Infringing Works were missing from Fairey's document production.

168.     The AP also continued to analyze the documents that Fairey did produce and noticed in the documents' metadata the existence of certain filepaths on Fairey's network that may have contained additional responsive materials.  On October 1, 2009, The AP sent Fairey an e-mail specifying these filepaths and asking Fairey to confirm whether the they had been searched.

169.     Fairey did not respond to The AP's October 1st e-mail for over a week until, finally, on the evening of Friday, October 9, 2009 in a letter from Fairey's counsel, Fairey admitted that he had destroyed or attempted to destroy documents that

would have revealed which image he actually used.  Fairey also admitted that he created

fake documents as part of his effort to conceal which photo was the source image,

including hard copy printouts of an altered version of the Clooney Photo and fake stencil

patterns of the *Hope*  and *Progress* posters.

170.    Specifically, the October 9th letter from Fairey's counsel admitted

that:

(a)    Fairey's Complaint wrongly asserted that Fairey used the Clooney

Photo rather than the Obama Photo;

(b)    Fairey had deleted or attempted to delete documents after filing the

Complaint, which documents showed that he used the Obama

Photo and not the Clooney Photo;

(c)    Fairey falsified documents in an attempt to demonstrate that he

used the Clooney Photo rather than the Obama Photo; and

(d)    Fairey's counsel had made inaccurate statements during discovery

about the source of the Infringing Works, which, according to

counsel, were believed to be accurate at the time such statements

were made.

A copy of Fairey's counsel's October 9th letter is attached as **Exhibit D**.

171.    In subsequent meet and confer discussions between Fairey and The

AP, Fairey's counsel explained that The AP's October 1st e-mail had led Fairey's counsel

to search the file locations provided by The AP for additional responsive documents,

some of which they found.  In other words, upon information and belief, if not for The

AP's diligence in pressing Fairey to search for and produce responsive documents, the fraud upon the Court may never have been uncovered.

172.    Most recently, on the evening of Friday, October 16, 2009, Fairey filed a motion for leave to amend the pleadings.  Fairey's proposed amended pleadings admit that he used the Obama Photo rather than the Clooney Photo to create the Infringing Works.  In addition, Fairey's motion states that "Fairey was apparently mistaken about the photograph he used when his original complaint for declaratory relief was filed on February 9, 2009."  Further, it alleges that only after Fairey realized his "mistake" did he destroy or attempt to destroy relevant documents and fabricate new documents for his counsel to produce to The AP.

173.    The AP, however, doubts the veracity of Fairey's most recent allegations about any such "mistake."  In essence, it appears that after being caught red-handed and admitting to fabricating and destroying evidence, upon information and belief, Fairey is now concocting another story to spin those bad acts in the best light possible.  It is simply not credible that Fairey somehow forgot in January 2009 which source image he used to create the Infringing Works, which were completed only a year earlier in January 2008.  It also strains credulity that an experienced graphic designer such as Shepard Fairey misremembered cropping George Clooney out of the source image and making other changes to create the Infringing Works when no such cropping or other changes were ever made.

174.    Fairey's claim of mistake is also suspect because before the Complaint was even filed, The AP spoke to Fairey's counsel and explained that the Infringing Works were based on the Obama Photo.  In fact, Fairey's counsel never

mentioned to The AP that Fairey believed he had used the Clooney Photo. Nevertheless, Fairey filed his claims apparently without first investigating the relevant records as one would have expected him to do, making the idea that he made a genuine "mistake" even more suspect.

175. As further evidence of Fairey's most recent lies and misdirections, prior to filing this lawsuit, upon information and belief, Fairey never mentioned cropping George Clooney or making other alterations to the source image in his public statements or press interviews. Upon information and belief, only after Fairey falsely claimed in the Complaint that he used the Clooney Photo and attempted to cover up that false allegation by destroying and fabricating evidence did he say publicly that changes had to be made to the source photo when he created the *Hope* and *Progress* posters.

176. Given that Fairey has already admitted lying about the true source image and fabricating documents to conceal those lies, it would not be surprising if Fairey's most recent allegations also contain misrepresentations.

177. Fairey's counsel also recently notified The AP and Garcia that they intended to seek the Court's leave to withdraw from their representation of Counterclaim Defendants. The AP intends to oppose any such request because, among other things, it would significantly prejudice The AP as it would take new counsel a substantial amount of time to come up to speed. It would also inevitably lead to additional expenses for The AP, a not-for-profit organization that has already been forced to incur substantial cost engaging in a discovery process that was made significantly more expensive by Fairey's lies and spoliation and fabrication of evidence.

178.    The AP must also press forward with Fairey's counsel to determine, among other things, whether other relevant documents have been destroyed, fabricated, or otherwise not produced to The AP.

Counterclaim Defendants' Sophisticated Merchandising and Marketing Enterprise

179.    Counterclaim Defendants have built a sophisticated merchandising and viral marketing enterprise based on Fairey's designs, which in turn are often based on the artistic works of others.  Upon information and belief, this fits perfectly with Fairey's commercial creed as a self-described "capital-embracing entrepreneur" who, according to published reports, specializes in marketing campaigns that "get alternative kids talking about mainstream brands."

180.    In addition, much of the merchandise covered by the Obey® and related trademarks, including merchandise created from The AP's Obama Photo, can be purchased at <http://shop.obeyclothing.com> and <http://obeygiant.com/>, which, as one would expect of a sophisticated merchandising operation, has been optimized to allow Google search results to efficiently render access to different aspects of Counterclaim Defendants' Web sites.  Counterclaim Defendants' graphic design and merchandising operations also extend to distributors and retailers, including Amazon.com.

181.    Upon information and belief, Fairey and his related entities have created successful marketing campaigns for Levi Strauss & Co., Mountain Dew, Universal Pictures, Express, Sunkist, Honda Civic, Dewars, Virgin Megastore, Guggenheim, Adidas and Motorola, among many others.

182.    It was reported recently that Counterclaim Defendants launched a successful marketing campaign for Saks Fifth Avenue, which displayed Fairey's designs

in the store and on shopping bags, including images of the Infringing Works, which, upon information and belief, Fairey used to support his commercial efforts, as pictured below.



183.    Moreover, as described above, Counterclaim Defendants regularly register intellectual property rights to their works and are quick to hunt down alleged infringers and assert their rights against third parties.

Counterclaim Defendants' Commercial Exploitation of the Obama Photo

184.    On information and belief, despite Counterclaim Defendants' bald assertions to the contrary, they have benefitted handsomely from The AP's Obama Photo by making commercial use of the Infringing Works.  That Counterclaim Defendants may have reinvested profits in increasing production, as Counterclaim Defendants have alleged, does not diminish the commercial nature or overall profits of their Infringing Works.

185.    Upon information and belief, the success of Counterclaim Defendants' commercial enterprise is evidenced by the more-than $400,000 in profits derived from the Infringing Works and the hundreds of thousands of Infringing Works already sold.

The Harm to The AP

186.     While Fairey is of course free to establish a commercial, for-profit enterprise designed to make money from his work, it is not fair for him to do so at the expense of others.  As stated above, The AP derives most of its revenue from licensing photographs and other original content, which in turn is the primary source of funding for its current and future news operation and to meet its financial obligations to generations of past journalists.  When third parties such as Counterclaim Defendants misappropriate The AP's photographs without compensation, credit or attribution, they undermine The AP's ability to pursue its First Amendment objectives, and the ability of visual journalists — as well as that of photographers and visual artists generally — to earn a fair livelihood.

187.     The equities of this lawsuit can be grasped by examining the parties involved, their conduct and the works involved.  On the one hand, a commercially-minded designer and his for-profit companies have created hundreds of thousands of infringing copies of copyrighted works, have contributed to the viral distribution of these works, have fraudulently registered them with the U.S. Copyright Office as having been created solely based on their own work, and have profited handsomely from their activities.  Those same entities now seek to avoid giving attribution to the photographer whose photograph they misappropriated and credit and compensation to the not-for-profit news organization who owns the copyright to the photograph.

188.     Moreover, Counterclaim Defendants absurdly suggest that it would be beneficial for The AP (or any photographer for that matter) for merchandisers to have free rein to copy a photographer's image and commercialize derivative works based on it

without first obtaining the photographer's permission.  To the contrary, if such activity were to become the norm it would undermine The AP's entire licensing program, ruining the livelihoods of the many hard-working photographers and other artists who rely on control of their intellectual property to make a living.  It would also harm the interests of other content owners who rely on fair compensation for their work in order to support their creative endeavors.

## FIRST COUNTERCLAIM — COPYRIGHT INFRINGEMENT

(17 U.S.C. § 101 et seq.)

189.     The AP incorporates by reference ¶¶ 1-188 above as if fully set forth herein.

190.     By the actions alleged above, Counterclaim Defendants have infringed and will continue to infringe The AP's copyright in the Obama Photo by using this original copyrighted photograph as a basis for the Infringing Works without permission.

191.     The AP is entitled to recover from Counterclaim Defendants the damages, including attorneys' fees, it has sustained and will sustain, and any gains, profits and advantages obtained by Counterclaim Defendants as a result of their acts of infringement alleged above.  At present, the amount of such damages, gains, profits and advantages cannot be fully ascertained by The AP, but will be established according to proof at trial.  The AP is also entitled to recover statutory damages for Fairey's willful infringement of their copyright.

## SECOND COUNTERCLAIM — CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (17 U.S.C. § 101 et seq.)

192.     The AP incorporates by reference ¶¶ 1-191 above as if fully set forth herein.

193.     By the actions alleged above, Counterclaim Defendants have encouraged, assisted, induced, caused, and/or materially contributed to a vast number of actual or imminent copyright infringements of The AP's Obama Photo in violation of 17 U.S.C. §§ 106 and 501.

194.     Counterclaim Defendants know or have reason to know of the actual or imminent direct infringement of The AP's copyright in the Obama Photo. Indeed, Counterclaim Defendants actively promote the infringements through the purchase of products and merchandise bearing the Infringing Works, provide tools that are indispensable to these infringements, and continuously facilitate the infringements.

195.     The infringements of The AP's copyrighted works that Counterclaim Defendants encourage, assist, induce, cause and/or materially contribute to through the conduct described above is without The AP's consent and not otherwise permissible under the Copyright Act.

196.     The foregoing acts of infringement by Counterclaim Defendants have been willful, intentional, purposeful, and with indifference to The AP's rights.

197.     The AP is entitled to recover from Counterclaim Defendants the damages, including attorneys' fees, it has sustained and will sustain, and any gains, profits and advantages obtained by Counterclaim Defendants as a result of their acts of infringement alleged above.  At present, the amount of such damages, gains, profits and

advantages cannot be fully ascertained by The AP, but will be established according to proof at trial. The AP is also entitled to recover statutory damages for Fairey's willful infringement of its copyright.

**THIRD COUNTERCLAIM — DECLARATORY JUDGMENT**
(28 U.S.C. §§ 2201 and 2202)

198.    The AP incorporates by reference ¶¶ 1-197 above as if fully set forth herein.

199.    Counterclaim Defendants improperly obtained copyright registrations in three of the Infringing Works, which are unauthorized derivative works, Registration Nos. VA0001651320, VA0001651318, and VA0001651319 (the "Unauthorized Registrations"). Such conduct constitutes fraud on the U.S. Copyright Office as Counterclaim Defendants were required to disclose that their Unauthorized Registrations were based on Pre-Existing Materials.

200.    As such, The AP requests that this Court declare that the Unauthorized Registrations were obtained through fraud, and thus not subject to copyright protection under 17 U.S.C. § 409, and order the U.S. Copyright Office to cancel the Unauthorized Registrations.

201.    By reason of the foregoing, there now exists between the parties an actual and justiciable controversy concerning Counterclaim Defendants' and The AP's respective rights and obligation to the use of the Obama Photo, requiring declaratory relief.

202.    The aforesaid declaration is necessary and appropriate at this time to affirm The AP's right to continue to make use of the Obama Photo.

203.    The AP has no adequate remedy at law.

204.    Accordingly, The AP seeks, pursuant to 28 U.S.C. §§ 2201 and 2202, a judgment from this Court that Counterclaim Defendants' copyright registration in the Infringing Works is invalid and should be cancelled.

## FOURTH COUNTERCLAIM — VIOLATION OF THE DMCA
(17 U.S.C. § 1202)

205.    The AP incorporates by reference ¶¶ 1-204 above as if fully set forth herein.

206.    The AP includes a copyright notice line on all AP photographs that includes The AP's name and the name of The AP photographer who took the photograph.

207.    The inclusion of The AP's name in all of its news reports is "copyright management information," as defined in 17 U.S.C. § 1202(c).

208.    Upon information and belief, Fairey, without authority of The AP or the law, has intentionally removed and/or altered and has caused and induced others to remove and/or alter copyright management information from The AP's Obama Photo, including for use in the Infringing Works, and have thereafter distributed said works, having reasonable grounds to know that such acts will induce, enable, facilitate or conceal an infringement of copyright under Title 17, United States Code, in violation of 17 U.S.C. § 1202(b)(1) and (3).

209.    Fairey's removal or alteration of copyright management information from The AP's Obama Photo, including for use in the Infringing Works, and subsequent distribution of the Infringing Works, as alleged above, was and is willful and intentional, and was and is executed with full knowledge of The AP's rights under copyright law, and in disregard of The AP's rights.

210.     The AP is entitled to recover its actual damages suffered as a result of the violation and any profits of Fairey attributable to the violation and not taken into account in computing actual damages, or, at The AP's election, statutory damages pursuant to 17 U.S.C. § 1203(c).

211.     The AP is entitled to recover costs and attorneys' fees from Counterclaim Defendants pursuant to 17 U.S.C. § 1203(b)(4) and (5).

212.     Counterclaim Defendants' violations of 17 U.S.C. § 1202(b)(l) and (3) have caused, and, unless restrained by this Court, will continue to cause, irreparable injury to The AP not fully compensable in monetary damages.  Pursuant to 17 U.S.C. § 1203(b)(1), The AP is entitled to a preliminary and permanent injunction enjoining Counterclaim Defendants from such further violations.

## PRAYER FOR RELIEF

213.     The AP incorporates by reference Paragraphs 1-212 as if set forth herein.

WHEREFORE, The AP requests:

(a)     That the Complaint and each Count thereof be dismissed with prejudice;

(b)     That the Court find that Counterclaim Defendants have infringed The AP's copyright in the Obama Photo;

(c)     That the Court enter judgment for The AP against Counterclaim Defendants for Counterclaim Defendants' actual damages according to proof, and for any profits attributable to infringement

of Counterclaim Defendants' intellectual property in accordance with proof;

(d) That the Court enter judgment for The AP and against Counterclaim Defendants for statutory damages based upon their acts of infringement pursuant to the Copyright Act of 1976, 17 U.S.C. § 101, et seq.;

(e) That the Court find that Counterclaim Defendants cannot assert copyright protection in any of the Infringing Works;

(f) An award of three times the greater of

(i) Counterclaim Defendants' damages for the wrongful acts of Counterclaim Defendants in an amount the Court deems appropriate, together with appropriate interest on such damages; or

(ii) Counterclaim Defendants' profits in accordance with the accounting demanded in the preceding paragraph, pursuant to 15 U.S.C. § 1117, and

(g) An award of Counterclaim Defendants' costs and disbursements of this action, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117;

(h) That the Court revise the caption of the litigation by the time of trial to place The AP in the position of the Plaintiff and Fairey and Obey Giant Art in the position of Counterclaim Defendants based on the anticipatory filing of the present action; and

(i) That the Court grants such other, further, and different relief as the Court deems just and proper.

Dated: October 20, 2009

KIRKLAND & ELLIS LLP


\_\_/s/Dale Cendali_____
Dale M. Cendali
Claudia Ray
Brendan T. Kehoe
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
dale.cendali@kirkland.com
claudia.ray@kirkland.com
brendan.kehoe@kirkland.com
*Attorneys for*
THE ASSOCIATED PRESS

# EXHIBIT A



# EXHIBIT B



# EXHIBIT C



# EXHIBIT D

Anthony T. Falzone
Executive Director
Fair Use Project
Center for Internet
and Society

Tel 650-736-9050
Fax 650-723-4426
falzone@stanford.edu

Stanford Law School

October 9, 2009

Dale M. Cendali
Kirkland & Ellis, LLP
601 Lexington Avenue
New York, NY 10022

George F. Carpinello
Boies, Schiller & Flexner, LLP
10 N. Pearl Street, 4th Floor
Albany, NY 12207

Bradford E. Kile
Kile, Goekjian, Reed & McManus, PLLC
1200 New Hampshire Avenue, N.W., Suite 570
Washington, DC 20036

Re:     *Fairey, et al. v. The Associated Press*
        *Case No.: 09-cv-1123 (AKH)*

Dear Counsel:

On October 2, 2009, counsel for Plaintiffs and Counterclaim Defendants ("Plaintiffs") learned new information relating to the identity of the photograph Mr. Fairey used as a reference to create the Obama Hope poster. In light of this new information, we advise you of the following:

First, we intend to amend our pleadings, including our initial complaint for declaratory judgment, our answer to the counterclaims alleged by The Associated Press ("The AP"), and our answer to the claims alleged by Mannie Garcia. We have attached the amendments we propose to this letter in red-line form as Exhibits A-C. These amendments reflect that Plaintiffs no longer contend that the Clooney Photograph was used in the creation of the Obama Hope poster. Nor do Plaintiffs deny that the Obama Photo was used in the creation of the Obama Hope poster. Please let us know if you will consent to these amendments.

Second, Plaintiffs no longer contend that the documents bearing Bates numbers FAIREY00669 through FAIREY00672 were used in the creation of the Obama Hope poster. We now understand that Mr. Fairey created these documents in 2009, after the original complaint was filed in this matter.

Third, we are producing to The AP additional documents bearing Bates numbers FAIREY104735 through FAIREY104766. We now understand that Mr. Fairey attempted to delete some or all of these documents at or around the same time he created the documents referenced in the paragraph above, but that he was unsuccessful in deleting all copies of them.

Fourth, we inform you that certain statements made to counsel for The AP in the course of meet and confer discussions that we understood to be accurate at the time now appear to have been inaccurate. On September 14, The AP was provided with Plaintiffs' portion of a draft letter to Judge Hellerstein (which was never submitted to the Court) concerning The AP's demands for additional information about files relating to the creation of the Obama Hope poster and the search Plaintiffs conducted for such files. That draft letter contained statements about the search Plaintiffs performed for such files, the non-existence of certain working files relating to the creation of the Obama illustration, and the circumstances surrounding the apparent deletion of those files. A September 8 email addressed some of these same subjects. Based on the new information we learned on October 2, those statements appear to have been inaccurate. Insofar as Plaintiffs or Plaintiffs' counsel made like statements during the course of other discussions on these subjects, it appears such statements were similarly inaccurate.

You may have questions about the issues raised in this letter. If you do, we suggest that we discuss how Plaintiffs might be able to address them in a way that minimizes expense and delay. Please contact us to discuss that possibility.

Sincerely yours,

Anthony T. Falzone /als

Anthony T. Falzone
Stanford Law School Center for Internet and Society

Joseph C. Gratz /als

Joseph C. Gratz
Durie Tangri LLP