Dale M. Cendali
Claudia Ray
Brendan T. Kehoe
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
Fax: (212) 446-4900

*Attorneys for Defendant, Counterclaim Plaintiff,
and Cross Claim Plaintiff/Defendant*
THE ASSOCIATED PRESS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHEPARD FAIREY and OBEY GIANT ART, INC., | |
| Plaintiffs, | |
| v. | Case No.:   09 CIV 01123 (AKH) |
| THE ASSOCIATED PRESS, | |
| Defendant and Counterclaim Plaintiff, | **THE ASSOCIATED PRESS'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION FOR SUBSTITUTION OF COUNSEL** |
| v. | |
| SHEPARD FAIREY, OBEY GIANT ART, INC., OBEY GIANT LLC, and STUDIO NUMBER ONE, INC., | |
| Counterclaim Defendants, | |
| And | |
| MANNIE GARCIA, | |
| Defendant, Counterclaim Plaintiff and Cross Claim Plaintiff/Defendant, | |
| v. | |

SHEPARD FAIREY AND OBEY GIANT ART, INC.,

        Counterclaim Defendants,

And

THE ASSOCIATED PRESS,

        Cross Claim Plaintiff/Defendant.

## TABLE OF CONTENTS

**INTRODUCTION**............................................................................................................................1

**ARGUMENT**....................................................................................................................................6
    A.    Withdrawal Is Not Warranted Under Local Rule 1.4 ............................................6
        (a)    Withdrawal Would Cause Material Adverse Effects On The Parties And The Proceedings..................................................................................7
        (b)    Withdrawal Would Cause Further Undue Delay .........................................9

**CONCLUSION** ...............................................................................................................................10

## SUPPORTING PAPERS

**Declaration of Dale M. Cendali in Support of The AP's Opposition to the Motion for Substitution of Counsel**

Exhibit A: Anthony Falzone's and Joseph Gratz's letter to Dale Cendali, George Carpinello, and Bradford Kile on October 9, 2009, regarding "*Fairey, et al. v. The Associated Press, Case No.: 09-cv-1123 (AKH).*"

Exhibit B: Anthony Falzone's e-mail to Dale Cendali on October 15, 2009, with the Subject "Fairey v. AP - amended pleadings and discovery scheduling."

i

The Associated Press ("The AP"), by its attorneys Kirkland & Ellis LLP, hereby opposes the motion filed by counsel for Shepard Fairey, Obey Giant Art Inc., Obey Giant LLC, and Studio Number One, Inc. (together, "Fairey") for substitution of counsel.  The AP is authorized to state that Mannie Garcia ("Garcia") also opposes the motion.

## INTRODUCTION

The AP respectfully asks the Court to deny the motion by Durie Tangri LLP and Stanford Fair Use Project (together, "Fairey's counsel") for substitution of counsel.  Fairey's counsel should not be permitted to withdraw from this lawsuit because they have unique knowledge regarding Shepard Fairey's admitted spoliation and fabrication of evidence, which goes to the heart of Fairey's claims that his use of a copyrighted AP photograph of Barack Obama (the "Obama Photo") to make the posters and other works at issue in this case (the "Obama Posters") was non-infringing (i.e., Fairey claims that the Obama Posters are not substantially similar to the Obama Photo) or a "fair use."  Withdrawal by Fairey's counsel would allow key facts and evidence regarding the spoliation and fabrication issues to go undetected, frustrating The AP's pursuit of the truth about what happened and why it was not detected earlier.  In addition, having new counsel start fresh nine months into the case after extensive discovery has already occurred would cause additional prejudice and undue delay to The AP, which, as a not-for-profit organization, has already been forced to incur significant expense in discovery due to Fairey's attempt to hide which photo he used to make the Obama Posters.[1]

As The AP intends to explain in its proposed motion for sanctions, before this case was even filed, an issue arose as to what image Fairey appropriated to make the Obama Posters.

---

[1] To avoid any doubt, The AP intends to move for terminating sanctions against Fairey on the spoliation and fabrication issues and will seek limited discovery in support of that motion.

(Cendali Decl. ¶ 2.)  By February 9, 2009, when Fairey filed this action, numerous third parties had already concluded that Fairey used the Obama Photo, a tightly-cropped photograph of Barack Obama looking presidential in front of the red, white, and blue American flag, to make Fairey's strikingly similar red, white, and blue Obama Posters.  (Cendali Decl. ¶ 3.)  Yet, even though Fairey's complaint attached an article identifying the Obama Photo as the source of the Obama Posters,[2] the complaint stated that Fairey used a different, less similar AP photograph, which depicted George Clooney sitting next to Barack Obama from the same press event, to make the works.  (Cendali Decl. ¶ 4.)

Months of intense discovery ensued during which The AP continually pressed for documents about the source photo that Fairey had used.  (Cendali Decl. ¶ 5.)  Time and time again, Fairey's counsel claimed to have produced all documents concerning the creation of the Obama Posters.  Despite numerous entreaties for Fairey to be more transparent about its preservation, collection, search, and production of documents, however, The AP was essentially rebuffed by broad generalizations that everything had been searched and produced.  (Cendali Decl. ¶ 6.)

During the course of exchanging drafts of a joint letter to the Court on these and other critical discovery issues, The AP repeatedly identified metadata, including specific file names, to Fairey concerning documents that had not been produced but that The AP believed existed, which related to the creation of the Obama Posters.  Ultimately, The AP sent Fairey an e-mail on October 1st identifying the specific file paths for these documents on Fairey's computers and asked Fairey's counsel whether those file paths had yet been searched.  (Cendali Decl. ¶ 7.)  The AP's October 1st e-mail led to Fairey's counsel's claimed discovery on October 2nd that Fairey

---

[2] *See* Fairey's Complaint at Ex. H (D.I. 1).

had fabricated evidence and destroyed or attempted to destroy highly-relevant documents in an effort to cover up the true identity of the source image, which Fairey's counsel admitted in its October 9th letter to The AP and Garcia.[3]  (Cendali Decl. ¶ 8 & Ex. A.)

Under these unusual circumstances, this Court should exercise its discretion to keep Fairey's counsel in the case.  First, as Fairey's counsel was intimately involved in the initial fact investigation prior to the filing of the action nine months ago and in the contested discovery process that ensued, they are in the best position to know "where the bodies are buried."  The AP is deeply concerned that the spoliation and fabrication to which Fairey has already admitted may be just the tip of the iceberg and that there may be other lies and misrepresentations to uncover, which Fairey's counsel is in the best position to address and/or detect going forward.  Even Fairey's present motion to the Court, which cryptically states that "[t]here are additional grounds that for reasons of professional obligation present counsel could explain *in camera* if the court [sic] felt it was necessary," (*see* Motion for Substitution at 5), supports this suspicion.  Moreover, The AP is concerned that new counsel inadvertently could be led down a path of further deception by Fairey because they would not have sufficient knowledge of what has transpired to date with respect to current counsel's fact investigation and discovery efforts.

Second, because The AP intends to move for sanctions, Fairey's current counsel is in the best position to timely defend the motion and ensure that any representations made by Fairey are, in fact, correct.  New counsel would require a significant amount of time to get up to speed, which Fairey has already acknowledged to The AP, and would not be in the best position to explain factually what had occurred.

---

[3] The AP has included a copy of Fairey's letter as Exhibit A to the Declaration of Dale M. Cendali in Support of The AP's and Garcia's Opposition to Motion for Substitution of Counsel ("Cendali Declaration.").

Third, substitution of counsel would unnecessarily delay this case.  When Fairey's counsel informed The AP and Garcia by e-mail on October 15, 2009 that they intended to withdraw as soon as practicable,[4] Fairey's counsel admitted that they "expect new counsel will require a significant extension of the fact discovery cutoff to get up to speed."  (Cendali Decl. at ¶ 11 & Ex. B.)  Even beyond that, new counsel could never truly be up to speed on all the nuances of countless meet and confer sessions, which have resulted in numerous compromise agreements between the parties, as well as several proposals for compromise that are still pending.  The lawyers and the knowledge they have about this case are not fungible.  Even existing counsel said that they could not answer questions about the spoliation and other discovery issues after Fairey's admissions came to light because Joseph Gratz, Esq. of the Durie Tangri firm, who had participated in many (but not all) of the meet and confer discussions with The AP, was "out of the country and on vacation."  (*See id.*)  The AP is extremely concerned that allowing new counsel to replace existing counsel now would effectively lead to a "do-over" and permit Fairey to reset discovery to the prejudice of The AP.

Fourth, Fairey and his counsel should not be rewarded for acting as though withdrawal were a *fait accompli*, which is exactly what they have done since informing The AP of Fairey's counsel's intention to withdraw on October 15th.  Under the Local Rules of this District, Fairey's counsel may not withdraw until the Court so orders, yet Fairey's counsel has failed to do virtually anything with respect to day-to-day discovery, including refusing to:  1) produce documents that Fairey had promised The AP months ago and in response to The AP's most recent document requests; 2) go forward with scheduled depositions, including that of Mannie

---

[4] The AP has included a copy of Fairey's counsel October 15th e-mail as Exhibit B to the Cendali Declaration.

4

Garcia's; or 3) reschedule Shepard Fairey's deposition, which has been repeatedly postponed and most recently was supposed to take place on September 29th and 30th. (Cendali Decl. ¶¶ 10-11.)

Even more troubling, though Fairey's October 9th letter admitting to the spoliation and fabrication of evidence presciently stated that opposing counsel "may have questions about the issues raised in this letter," and offered to discuss how "Plaintiffs might be able to address them in a way that minimizes expense and delay" — in fact, Fairey's counsel has failed to do so. They have repeatedly refused to answer such basic questions as: 1) When did Fairey fabricate and destroy documents?; 2) Where and on whose computers were the documents found?; 3) What documents have been destroyed or are not recoverable (e.g., Fairey has still not produced a copy of the Obama Photo that he downloaded from the Internet)?; and 4) Why did Fairey's counsel fail to find the documents earlier given their repeated representations that they had searched for and produced *all* documents related to the creation of the Obama Posters. (*See* Cendali Decl. ¶ 9.)

Factual information about the discovery process is not privileged, yet Fairey has refused even prior to the recent revelations about spoliation to answer The AP's questions regarding the scope of Fairey's search for discoverable materials, citing in part privilege concerns. The AP has continued to press for answers to these basic questions, which led to Fairey's counsel providing The AP and Garcia with a letter on October 28, 2009, that for the first time generally discussed Fairey's search for documents and the spoliation issues (while still avoiding the central questions set out above). But Fairey improperly designated the letter as 1) confidential under the Protective Order entered in this case, 2) confidential under Rule 408 of the Federal Rules, and 3) reflecting privileged attorney-client communications, in an obvious effort to shield otherwise discoverable factual information to which The AP and Garcia are entitled. (*See* Cendali

5

Decl. ¶ 12.) Because The AP and Garcia dispute the privilege and confidentiality designations on the letter, The AP and Garcia respectfully request that Your Honor review it *in camera* to confirm that it is a routine discovery communication that cannot be shielded.

Fact discovery in this case has been a lengthy and hard-fought process with countless meet and confer sessions and discovery compromises. Fairey and his counsel have unique knowledge of the relevant facts and history and, moreover, have failed to explain how new counsel, once they are brought up to speed on the discovery and spoliation issues, could avoid the same potential conflicts issues that current counsel claims to have. In the meantime, Fairey has abruptly brought discovery to a standstill and any additional delay caused by substitution of counsel now would only serve to reward Fairey and further penalize The AP for Fairey's misdeeds.

As Your Honor wrote in *In re September 11th Liability Ins. Coverage Cases*, 243 F.R.D. 114, 124-25 (S.D.N.Y. 2007), "the judicial process depend[s] upon honesty and fair dealing among attorneys," Fairey's counsel cannot be allowed to simply step aside and continue to shield from discovery what went wrong with the search for and production of discoverable information.

## ARGUMENT

A. **Withdrawal Is Not Warranted Under Local Rule 1.4**

Under Local Civil Rule 1.4, an attorney of record may be "relieved or displaced only by order of the court." "Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar." District courts are given considerable discretion in deciding whether the requesting party has proffered a sufficient reason to warrant withdrawal. *See Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999) ("District courts are due considerable deference in decisions not to grant a motion for an attorney's withdrawal.")

      (a)    <u>Withdrawal Would Cause Material Adverse Effects On The Parties And The Proceedings</u>

The Court may deny a motion to withdraw where "withdrawal cannot be accomplished without material adverse effect on the interests" of the other parties to the litigation. *In re Albert*, 277 B.R. 38, 49-50 (Bankr. S.D.N.Y. 2002) (denying motion to withdraw under the analogous SDNY Bankruptcy Court rules because the showing of non-payment of fees was insufficient and withdrawal had already adversely effected the opposing party by disrupting settlement discussions). Such adverse effects may exist where counsel's intention to withdraw has disrupted discovery proceedings or settlement discussions or where the parties intend to bring potentially dispositive motions in the near-term. *See id.* at 41, 49-50; *Rophaiel v. Alken Murray Corp.*, No. 94-9064, 1996 WL 306457, at *2 (S.D.N.Y. June 7, 1996) (motion to withdraw denied due to, among other things, undue prejudice caused to the opposing party by further delaying discovery).

As explained in detail above, Fairey's counsel have used their attempted withdrawal as an excuse to bring discovery to a standstill and disrupt the proceedings, causing severe prejudice to The AP. As just one example, Fairey's counsel has attempted to hide the ball about what went wrong with the search for discoverable materials and spoliation issues by incorrectly asserting that factual information about these topics is somehow privileged, when it plainly is not. *See In re Feldberg*, 862 F.2d 622, 627 (7th Cir. 1988) (Easterbrook, J.) ("There is no need for a privilege to cover information exchanged in the course of document searches, which are mostly mechanical yet which entail great risks of dishonest claims of complete compliance. Dropping a cone of silence over the process of searching for documents would do more harm than good."); *see also Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 434-37 (S.D.N.Y. 2004) (reflecting that counsel disclosed myriad details about its search for responsive documents and related

7

spoliation issues). Moreover, Fairey's counsel has an obligation to cooperate and provide this information transparently in keeping with the Sedona Principles, which this District "strongly endorses," and the *Zubulake* line of cases. *See William A. Gross Constr. Assoc., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009) ("strongly" endorsing the Sedona Principles and noting that "[e]lectronic discovery requires cooperation between opposing counsel and transparency in all aspects of preservation and production of ESI"); *Zubulake*, 229 F.R.D. at 436 (ordering sanctions for spoliation of evidence and directing that counsel must cooperate with opposing counsel regarding collection and production issues). The need for transparency here is especially great given Fairey's admitted fabrication and spoliation of evidence. *See Zubulake*, 229 F.R.D. at 436.

Fairey's counsel should not be permitted to withdraw and effectively shield from discovery otherwise discoverable facts about the scope of Fairey's search for documents and the spoliation and fabrication issues. Despite Fairey's counsel's representations in its motion that they will "assist [new] counsel to become knowledgeable about the case as quickly as possible," the motion does not provide a single detail about how counsel could possibly transfer to new lawyers all the myriad nuances of the extensive meet and confer process, let alone the efforts to preserve, collect, search, and produce documents to date. (*See* Motion for Substitution at 6.) Furthermore, The AP is concerned that there may be additional information and documents yet to be uncovered regarding Fairey's discovery practices as hinted at by counsel's statement in their motion that "there are additional grounds that for reasons of professional obligation present counsel could explain *in camera* if the Court felt it was necessary." (Motion for Substitution at 5.) Though in their motion Fairey vaguely refers to conflicts of interest that have arisen between Fairey and current counsel, they do not attempt to explain with any specificity what those

8

conflicts actually are or why new counsel would not be in the same position once they are informed as to what transpired.

      (b)    <u>Withdrawal Would Cause Further Undue Delay</u>

The posture of the case also warrants denying Fairey's counsel's motion to withdraw. The fact discovery deadline, which has already been extended once, recently expired. *See Rophaiel*, 1996 WL 306457, at *2 (withdrawal may not be used for improper purposes such as to intentionally delay a case). Moreover, Fairey's counsel has acknowledged that new counsel would need a significant extension of the fact discovery deadline to come up to speed and has refused to produce documents that it promised to produce or participate in depositions until the withdrawal issue is resolved (by contrast, as explained below, The AP has requested only a brief extension of the fact discovery cutoff to complete necessary discovery). Such delay needlessly prejudices The AP, which has already been forced to spend significant sums of money and waste considerable resources taking discovery on which AP photograph Shepard Fairey used to create the Obama Posters, including deposing four separate witnesses on that very question. (Cendali Decl. at ¶ 5.) Contrary to Fairey's counsel's assertions in their motion, bringing in new counsel at this point would require all the parties to start fresh in discovery and incur significant additional fees while new counsel comes up to speed.

Lastly, any further delay at this point would only benefit Fairey, which is plainly unfair in light of Fairey's now-admitted bad faith efforts in bringing this lawsuit and continued pressing of his claims. *See Rophaiel*, 1996 WL 306457, at *2 (denying motion to withdraw where withdrawal could be used for unfair purposes). Fairey's attempt in its motion to blame any such delay on The AP's and Garcia's recent proposed amendments misses the mark, as much of the document discovery with respect to Obey Clothing has already taken place and The AP and Garcia would only need to depose Obey Clothing's 30(b)(6) witness prior to the close of fact

9

discovery.[5]  In addition, with respect to Garcia and Fairey, The AP simply needs to take two additional depositions, that of Mr. Fairey and Mr. Garcia — both of which had been scheduled but were postponed to accommodate Mr. Fairey's travel schedule and due to a death in Mr. Garcia's family.  Similarly, Garcia has informed The AP that he intends to conduct only a handful of depositions.  Lastly, The AP expects that new counsel would delay any efforts at settlement, causing the parties further needless expense and delay.  *See In re Albert*, 277 B.R. at 49-50.

## CONCLUSION

For the foregoing reasons, The AP respectfully requests that the Court deny Fairey's counsel's motion for substitution because withdrawal by counsel would cause materials adverse effects on The AP and Garcia and unduly delay the proceedings.


Dated: November 9, 2009                    KIRKLAND & ELLIS LLP


                                            *s/ Dale M. Cendali*
                                    By:    Dale M. Cendali
                                           Claudia Ray
                                           Brendan Kehoe

                                           601 Lexington Avenue
                                           New York, New York 10022
                                           Tel:   (212) 446-4800
                                           Fax:   (212) 446-4900
                                           Email: dale.cendali@kirkland.com
                                                  claudia.ray@kirkland.com
                                                  brendan.kehoe@kirkland.com

                                           *Attorneys for*
                                           THE ASSOCIATED PRESS

---

[5] The AP also intends to ask for limited discovery in support of its proposed motion for sanctions, in order to confirm what has happened.